CLAYTON *v.* FLETCHER SAVINGS AND TRUST COMPANY ET AL.

[No. 12,528. Filed March 10, 1927. Rehearing denied June 30, 1927. Transfer denied May 31, 1929.]

*Emil C. Stroeh* and *White & Jones,* for appellant.

*John V. Wilson, L. Ert Slack, George G. Rinier, Clinton H. Givan, Claude H. Anderson* and *Louis B. Ewbank,* for appellees.

McMAHAN, C. J.—Action by appellant against Fletcher Savings and Trust Company and Plymouth Realty and Investment Company for the specific performance of a contract wherein appellees sold and agreed to convey to appellant lots 50, 51 and 52, in "Blue's Overlook, an addition to the city of Indianapolis," Marion county, Indiana.

The contract was executed in July, 1917, and by its terms the trust company, as trustee, agreed to convey said three lots to appellant for $2,245, $20 of which was paid at the time the contract was executed. The bal-

ance of the purchase price was to be paid as follows: $20 on the 1st day of August, 1917, and a like amount on the first of each succeeding month until the whole amount was paid. Appellant was to pay an increment charge to cover the agreed future enhancement in value, of six per cent per annum to be calculated on the unpaid purchase price.

The contract, among other things, provided: "(5) That time shall be of the essence of this agreement and if said taxes or assessments be not paid when due, or if said monthly installments of said purchase price shall become delinquent for a period of sixty (60) days . . . , the vendor may, at its option, after ten (10) days notice, rescind this agreement to sell . . . ; but said vendor shall have no right under this agreement to enforce payment of the unpaid balance of said purchase price and hereby waives and disclaims any such right; and, in the event of such rescission, all payments theretofore made by the purchaser shall be kept and retained by the vendor, not as a penalty but as rent for said real estate, and as a reimbursement for the expense incurred incident to the sale thereof; and in such event all claims and demands of said purchaser under this agreement, against either vendor or said real estate shall cease and determine. Failure or delay by the vendor to exercise said option at the time of any default shall not be or operate as a waiver of the vendor's right to exercise such option for the same or any subsequent default at any time thereafter. . . .

"(9) That a letter addressed and sent by the United States mail to the purchaser at 2305 Brookside Avenue shall be sufficient notice whenever required for any purpose by this agreement, but personal notice in writing may be served upon the purchaser at the election of the vendor."

The contract was signed by the trust company and by

the realty company, for whom the former was acting as trustee. Each appellee filed an answer of general denial. From a decree in favor of appellees, this appeal is prosecuted.

Appellees' contention is that the contract was canceled and all of appellant's rights thereunder forfeited on account of his failure to pay the installments of purchase price in accordance with the provisions of the contract. Appellant admits he did not pay the installments in the amounts and at the times provided in the contract, but says that appellees, after the several defaults and delinquencies by him in the payment of the installments, habitually accepted payments of such installments long after they had become delinquent. Appellant insists that appellees by so accepting payments on account of the purchase price at irregular times and in irregular amounts waived their rights to cancel the contract on account of his failure to pay the installments when they became due within the sixty days of grace provided for in the contract. There was a decree denying appellant any relief. Appellant contends the decision is not sustained by sufficient evidence and is contrary to law.

The evidence, without conflict, shows that appellant made payments totaling $1,220, in the amounts and at the times as follows:

| | |
|---|---|
| July, 1917 | $20.00 |
| August 21, 1917 | 20.00 |
| October 5, 1917 | 20.00 |
| November 20, 1917 | 20.00 |
| July 8, 1918 | 20.00 |
| October 21, 1918 | 40.00 |
| November 13, 1918 | 40.00 |
| January 7, 1919 | 80.00 |
| March 24, 1919 | 80.00 |
| June 16, 1919 | 100.00 |
| August 5, 1919 | 80.00 |

| | |
|---|---:|
| March 2, 1920 | 150.00 |
| October 30, 1920 | 100.00 |
| March 14, 1921 | 200.00 |
| December 1, 1921 | 100.00 |
| November 27, 1922 | 150.00 |
| Total | $1,220.00 |

The first $20 was paid on the execution of the contract, and was paid to R. A. Goldrick, who was the secretary of the realty company, and who shortly thereafter died. After his death, his widow became secretary and treasurer of the realty company. She owned the majority of the capital stock of that company. Prior to January 7, 1919, appellant had made seven payments on the purchase price, the amount so paid being $180. Appellant, on said day, was delinquent in the sum of $200. There is a conflict in the evidence concerning a rescission or cancellation of the contract which took place about this time. There is some evidence to the effect that there was a cancellation and reinstatement of the contract in 1918. Appellant testified he rescinded the contract January 7, 1919; that, when he so informed Mrs. Goldrick, she urged him to keep up his payments to the best of his financial ability and that he then paid $80 on the contract to Mrs. Goldrick. Mrs. Goldrick denied having received this payment and says she never received any of the payments from appellant. She says she, on numerous occasions, telephoned him and called his attention to the fact that he was delinquent; that the last time she called him was in November, 1922. Appellant paid $100 on account of the contract December 1, 1921. The next payment was on November 27, 1922, when he paid $150. This last payment, as well as a number of previous payments, was accepted long after it was due.

It is quite clear appellees had waived the provisions in the contract requiring payments the first of each

month and making time of payments of the essence of the contract. Indeed, appellees, while not admitting such waiver, make no claim they had not waived such provisions. Their contention is that on June 29, 1923, they notified appellant that if he did not make a "substantial" payment on the contract on or before July 11 following, they would cancel the contract, and that no further payments having been made by appellant, they did cancel the contract July 12, 1923. The determination of this appeal depends upon the validity and effect of this cancellation. No question has been raised as to whether this defense was available to appellees under the general denial or whether rescission or cancellation should be specially pleaded when relied on as a defense. The evidence on this question was introduced without objection, and, for the purpose of this appeal, we assume it was properly introduced.

Paragraph 5 of the contract, as heretofore set out, provides that if the monthly installments become delinquent for a period of sixty days, the vendor may, at its option, after ten days' notice, rescind the agreement. The effect this provision for notice had on the clause making time of the essence of the contract is not material to a consideration of the question involved, although it would seem to have a nullifying effect. Ordinarily, when time of payment is of the essence of the contract and there has been a failure to pay at the time named in the contract, and no waiver of such provision, no notice of an intention to cancel or forfeit the contract is required.

Under the contract in the instant case, no such action could be taken until there was a delay or default of sixty days, and then, to make time of the essence of the contract and to give appellees the right to exercise the option to rescind, a ten days' notice was required. As before stated, if the provision requiring

notice of the intention to rescind had been omitted from the contract, no notice would have been required, and when an installment became delinquent for a period of sixty days, the right to forfeit the contract under the law would have been absolute, if the parties had not by some act waived their right to declare a forfeiture. If, for instance, it had been their custom and habit to accept payments of purchase price at irregular times and in irregular amounts, more than ten days after a sixty-day default in paying the installments, the right to declare a forfeiture of the contract without doubt would have been waived, and could not ordinarily have been exercised without a personal notice giving the purchaser a reasonable time within which to make payment of the delinquent installment or installments. Of course, circumstances might arise that would excuse notice, but no claim is made that notice was not required in the instant case. The notice so required by law is a personal notice. And the ten days' notice which appellees were, under paragraph 5 of the contract, required to give before they could rescind, must be construed to be a personal notice in the absence of some provision in the contract clearly to the contrary.

Appellees contend that under paragraph 9, a letter addressed and sent by mail to appellant at 2305 Brookside avenue, was a sufficient notice, and gave them absolute right to rescind the contract and forfeit the money paid by appellant, even though such letter never reached him, and, for some unknown reason, was returned to appellees and was not delivered to appellant or brought to his attention. The lots mentioned in the contract are described as being in "Blue's Overlook, an Addition to Indianapolis," and as being somewhere in Marion county. Whether they are in or outside of the city of Indianapolis we do not know. The residence of appellant is not given in the contract other

than as "Marion County, Indiana." Whether he lived in or outside the city of Indianapolis is not disclosed. We judicially know there is no postoffice in the State of Indiana of the name of "Brookside Avenue," or "2305 Brookside Avenue." "2305 Brookside Avenue" may be a street address in the city of Indianapolis, and a letter addressed to 2305 Brookside avenue, Indianapolis, Indiana, might be delivered to that address; we do not know. That, however, is not the address stated in the contract, unless we are at liberty to read something into the contract that is not there. This we will not do. The purported address as stated in the contract is equivalent to no address. It may be the evidence is sufficient to justify an inference that appellant, at the time the contract was executed, resided at 2305 Brookside avenue in the city of Indianapolis, Indiana, and that it was the intention of the parties to provide that a letter addressed to appellant at that street address in the city of Indianapolis and mailed should be a sufficient notice, and that, under proper pleadings, the court would have been justified in reforming the contract by inserting the words "Indianapolis, Indiana." This court, however, cannot and will not insert those words in order to sustain a forfeiture.

We will now examine the evidence introduced by appellees bearing upon the question of notice to appellant of their intention to cancel the contract, and the alleged cancellation. Ethel Gage testified that she was a stenographer for the trust company in the years 1922, 1923 and 1924; that she wrote and mailed some letters to appellant at 2305 Brookside avenue; that she wrote a letter in June stating *she* would cancel the contract; that later she followed that up and canceled it; that she mailed them. She identified defendants' Exhibit 3 as a letter written in July, 1923, canceling the contract, and said she wrote and mailed it. She identified defendants' Exhibit 2 as a

letter written in June, 1923, threatening to cancel the contract, and stated that she wrote and mailed it. On cross-examination, she said these letters were not registered; that they were returned; that she did not know what became of the envelops they were in; it was possible there was a mistake in the address and she could not say for sure whether the envelops were properly addressed or not.

Minnie Balay, a bookkeeper for the trust company, testified that, after the last cancellation, appellant came in, in July, 1923, when she talked to him about the cancellation. In answer to a question as to the method of canceling the contract, she said: "In June 1923, we sent him a notice telling him we would cancel in ten days if he did not come, and then sent the final cancellation written June 12"; that Miss Gage wrote the letter; "We wrote him a letter telling him we would cancel June 8, 1923, and we wrote on June 9, 1923; and on July 12, 1923, we canceled it." She was asked, "Where were the letters mailed?" and answered, "2305 Brookside Avenue." She said the letters were signed by Mr. Richardson; that the letters were returned. Exhibits 2 and 3 identified by Miss Gage were "offered" in evidence, although the record does not show they were introduced or read into the record. We will, however, assume they were introduced in evidence.

They are as follows:

Exhibit No. 2

"Fletcher Savings and Trust Co.
"Indianapolis,

"June 29, 1923.

"Mr. Chas. Clayton,
"2305 Brookside Ave.,
"City.
"Dear Sir:

"Unless we have a very substantial payment on or before July 11th to take care of the delinquency on your contract to purchase lots 50-51-52

in Blue's Overlook Addition, this is to advise that we will cancel your contract. .

"Yours very truly,
"Fletcher Savings & Trust Co.,
"B. E. Richardson.
"Mgr. Real Estate Trust Dept."

Exhibit No. 3

"Fletcher Savings and Trust Co.
"Indianapolis.

July 12, 1923.

"Mr. Chas. Clayton,
"2305 Brookside Ave.,
"City.
"Dear Sir:

"On account of the delinquent condition of your contract to purchase lots 50-51-52 in Blue's Overlook Addition, this is to advise that we are today canceling this contract, and we will not be bound further by same.

"Very truly yours,
"Fletcher Savings & Trust Company,
"B. E. Richardson,
"Mgr. Real Estate Trust Dept."·

Appellant testified, in substance, as follows: That, at the time the contract was entered into, he resided at "2305 Brookside Avenue"; during the last three years has lived at 4300 Millersville road; after he left Brookside avenue, he had his mail forwarded to his office; never received any notice of the cancellation; Mrs. Goldrick would mail tax papers to him and he paid the taxes.

As heretofore stated, Mrs. Goldrick owns the majority of the stock of the realty company and, after her husband's death, became secretary and treasurer of the realty company and manager of its business. There is considerable conflict between her testimony and that given by appellant. He says he made a number of payments to her. She denies this and says she never re-

ceived any money from him. It is clear from the evidence, however, that she was the person who looked after the collection of money for the realty company. She says she met appellant and had conversations with him; called him by telephone in 1922, before he made his last payment, and told him he was back in his payments; she did not think he ever made a payment unless she reminded him of his delinquency; she went to his office one time to talk with him when he wanted to give up the lots; she called him several times; that was the only way she could keep the payments from becoming delinquent; would get the tax receipts from the trust company and mail them to appellant.

In this connection, appellant testified he made his payments first to Mr. Goldrick, then to Mrs. Goldrick, and then to the trust company; after he moved from 2305 Brookside avenue, his mail was sent to his office; that Mrs. Goldrick mailed the tax papers to him; that he paid all the taxes except one installment, which was paid by Mrs. Goldrick; did not notify trust company he had changed his address.

While the name of the realty company does not appear in the body of the contract, and while there is nothing in the contract except as may appear from the fact that it was signed by the realty company to indicate that the latter company was the real party in interest or that the contract was made for its benefit, it is clear from the evidence that the real party in interest in the contract and in this action is the realty company and that practically all of the transactions, after the execution of the contract, concerning the contract were transacted between appellant and Mrs. Goldrick as the representative of the trust company as trustee, and of the realty company, the real party in interest. According to the undisputed evidence, whenever any communication was had with appellant concerning payment of installments on

the contract or of taxes, Mrs. Goldrick either called appellant by telephone or would mail the necessary papers to appellant at his office, and not at 2305 Brookside avenue. The conclusion is irresistible that she knew he did not live at the Brookside avenue address and that he no longer received his mail at that place. And, with this knowledge, and knowing the location of his office and that a letter addressed to him at his office would be delivered to him, she probably was the moving spirit in causing the letter dated June 29, 1923, to be mailed to him at the place where she knew he did not reside, instead of to his office, or instead of having a personal notice "served" on him. The inference can very properly be drawn that the letters in question were mailed to 2305 Brookside avenue with full knowlegde they would not be delivered to and would not be received by appellant. Indeed, the inference might be drawn that they were sent to that address for the purpose of preventing appellant from receiving any notice of the proposed cancellation of the contract, with the idea that, in so mailing the notice, appellees were acting within the letter of the contract, and that appellant would be bound thereby though he never received the notice.

We are assuming that the letter dated June 29, 1923, that being the notice which appellees claim gave them the right to cancel the contract, was placed in an envelop properly addressed, with postage prepaid and that it was dropped or mailed in a receptacle furnished by the government for the reception of mail. We will assume these facts, not because the evidence so shows, but because appellant has failed to point out the insufficiency of the evidence to prove the actual mailing of the notice in question. We will, for a like reason, assume the notice was mailed on the day it bears date, although there is no evidence on that question.

This brings us to a consideration of the sufficiency of

the notice to authorize a cancellation of the contract. Forfeiture is a harsh remedy, not favored in equity, and must yield to the principle of compensation where fair dealing and good conscience seem to demand. Where a party by his indulgence has waived the provision of a contract making the time of payment of money of the essence of the contract, and temporarily suspends the right to declare a forfeiture, such right can be resumed only by giving a definite and specific notice to that effect. *Eaton* v. *Schneider* (1900), 185 Ill. 508, 57 N. E. 521. "A declaration of forfeiture must be clear and unambiguous, conveying an unquestionable purpose to insist that the forfeiture has accrued." *Maday* v. *Roth* (1910), 160 Mich. 289, 125 N. W. 13, 136 Am. St. 441.

In the instant case, the letter of June 29, 1923, was written by the trust company as the agent and representative of and for the benefit of the realty company. If the trust company had been the sole owner of the property, and as such had, when it mailed this letter to appellant, been possessed of all the information possessed and known to Mrs. Goldrick, common honesty and square dealing would have told it that such a notice was no notice to appellant and that, before attempting to cancel the contract and forfeit the money which appellant had theretofore paid on the contract, it should have mailed the letter to the then-known address of appellant or have served him with notice so as to give him a reasonable time within which to pay the delinquent installments.

What positive and definite information would the notice in question have given appellant if he had actually received it? Not that it was the intention to cancel the contract if the amount of the delinquency or a definite part of it was not paid. Indeed, the notice on its face does not indicate an intention to require the payment of the delinquent installments,

or of any specific part thereof. No one could tell from the notice the amount it was necessary to pay or the amount appellant would be expected to pay. The expression "a very substantial payment" left the amount to be paid subject to further negotiation. Who was to determine what would amount to a substantial payment? Appellant, thinking $50 would be a substantial payment, might have gone to the office of the trust company July 11, and offered to pay that amount, and then have been met with the claim that the amount tendered was not sufficient and a demand that he pay $100, and, because of his want of information as to the amount required, he might not have been able to pay the $100. Or what would have prevented the trust company from accepting the $50 if offered on July 11, and, on the next day, giving appellant another notice demanding payment of the balance of the delinquent installments on or before the expiration of ten days, or suffer a forfeiture. The notice in our opinion was not sufficiently definite and specific to warrant a cancellation of the contract.

It is questionable whether a notice of intention to cancel the contract should not have been signed by the trust company as "trustee," and also by the realty company. Where two or more parties are jointly interested in a contract, on one side or the other, notice of rescission must ordinarily be given to or by all of them, as the case may be. *Fountain City Drill Co.* v. *Peterson* (1906), 126 Wis. 512, 106 N. W. 17.

When the letter of June 29 was returned, appellees knew it had never been received by appellant. They knew he had no notice of their intention to cancel the contract and forfeit the money he had paid on the contract. With this knowledge, equity and fair dealing required that they give appellant personal notice of their intention. This they did not do.

Appellant tendered appellees the amount due them

under the contract before the beginning of this action, and has kept that tender good by paying the money into court for use of appellees.

The evidence is not sufficient to sustain a cancellation of the contract and the forfeiture of appellant's rights thereunder.

Judgment reversed, with directions to sustain appellant's motion for a new trial and for further proceedings.

Dausman, J., absent.