CHAMBERS ET AL. *v.* BOATRIGHT ET AL.

[No. 19,390. Filed October 19, 1961.]

*Steers, Klee, Jay & Sullivan,* of Indianapolis, and *Stevenson, Kendall & Stevenson,* of Danville, for appellants.

*Henry R. Wilson, Jr.,* of Indianapolis, for appellees.

KELLEY, J.—The appellants duly instituted this action in Room 2 of the Superior Court of Marion County against appellees for the possession of certain described real estate in the city of Indianapolis and for the appointment of a receiver to collect the rents therefrom. The complaint alleges in material substance that the appellants, by written contract, agreed to sell and appellees agreed to buy said real estate on which there was located "four residences or dwelling units"; that appellees were in default in payment of the monthly payment due May 1, 1958, and of the interest, taxes, and insurance. None of the said residence or dwelling units were occupied by appellees. Two days after the complaint was filed, a receiver was appointed by said court. Further reference to the said appointment of said receiver will be made subsequently. A change of venue took the cause to the Circuit Court of Hendricks County where, upon issues appropriately closed, the same were submitted to the court, without jury. At the conclusion of the trial, the court entered a finding for the appellees and rendered judgment that appellants take nothing and with costs against them.

The only assignment of error is that the court erred in overruling appellants' motion for a new trial. Specifications 3, 4, 5 and 6 of said motion assert that since the trial appellants have discovered evidence material to their action. In the several particulars, they say that they "could not with reasonable diligence have discovered and produced" the particular evidence referred to in each of said specifications. Attached to the motion

are four affidavits concerning, respectively, the subject of said specifications. Nothing is alleged or set out in the new trial motion or in the said affidavits to show why the evidence was not available to appellants at the time of the trial. Nor are any facts set forth or any detailed statement made therein as to any diligence exercised by appellants to procure said evidence at the trial. The only averment in the motion as to appellants' diligence in the matter is their aforesaid negative conclusion.

It is not sufficient to generally allege diligence in procuring evidence at the trial, *Anderson* v. *Hathaway* (1891), 130 Ind. 528, 30 N. E. 638, *Allen* v. *Bond, Trustee* (1887), 112 Ind. 523, 14 N. E. 492, *Bertram* v. *State ex rel.* (1903), 32 Ind. App. 199, 69 N. E. 479, and mere conclusions are insufficient, *Schick* v. *Blakesley* (1922), 80 Ind. App. 253, 134 N. E. 498. "The motion must set out a detailed statement of the facts constituting the diligence with such particularity, definiteness and clearness that the court may itself see, on the face of the pleading, that there was, in fact, proper diligence." I. L. E. *New Trial*, Vol. 22, §122, p. 100, and cases cited. Appellants' motion for a new trial fails to meet said requirements as to said specifications of newly discovered evidence and, insofar as said specifications are concerned, appellants have demonstrated no abuse of the court's judicial discretion in regard thereto.

The only remaining specification of error available for consideration is that charging that the decision is contrary to law. The specification that the decision is not sustained by sufficient evidence is unavailable since the finding was negative. The foremost question arising from the said former claimed error concerns whether appellants were required to give

notice to appellees of their intention to rescind and declare a forfeiture of the written conditional sales contract. There is no contention that any such notice was given to appellees.

The record evidence discloses that on April 6, 1957, the parties entered into a written conditional sales contract by the terms of which appellees were to pay $18,000.00 for the real estate, payable $1000.00 down, $500.00 on July 1, 1957, and $175.00 each month beginning May 1, 1957, and to pay, also, the taxes and insurance; that from the date of entry into the contract, appellees did not make the payments therein provided, regularly or on the dates they became due. The evidence further shows that from time to time appellants accepted the payments after they became due. They advised the appellees that the latter had not "lived up to the terms of the agreement" and that appellants had been "very lenient with you (appellees), and in the future shall expect you to live up to the terms of the Conditional Sales Contract." However, the evidence reveals that appellants habitually, consistently and customarily continued to accept delinquent payments on the account, even after the present action was commenced, in amounts and at times different from those expressed in the contract.

The instant action was filed on May 7, 1958 and on May 9, 1958 one J. S. Cruse was appointed receiver by the judge of said Room 2, Superior Court of Marion County. The record reveals the following testimony of appellee, Otis H. Boatright, Jr., relative to the appointment of said receiver: (as quoted in appellants' brief)

"On May 9, 1958 I met at Mr. Jay's office an hour or possibly an hour and a half before the trial. I was there pursuant to an invitation by him. He sent me a telegram and called me on the phone. He told me when to come in. Mr. Chambers was there.

Mr. Jay was representing Mr. Chambers. I had a conversation with Mr. Jay in the presence of Mr. Chambers relative to a receivership in this matter. On the phone Mr. Jay tried to induce me to voluntarily turn the property over to Mr. Chambers. I told him 'no, I wouldn't do that because I put money in it and it came out of my own pocket when the tenants moved out owing me' and I told him that 'I had too much at stake in it to do that.' We talked about it too, so he offered a suggestion about the receiver. He says 'we can appoint a receiver to collect the rents and pay up this deficit' —in other words, the $504.00 insurance Mr. Chambers claimed I was in arrears in, 'and apply the balance to the contract' which I agreed to that and also when we went over to the Court. Mr. Chambers, Mr. Jay and myself. I wasn't represented by counsel. The judge asked me did I have counsel and I told him it was too short a notice. I told him I hadn't reached any agreement with Mr. Jay and Mr. Chambers and I went on to state what agreement that we reached. That I would be willing to let the property go into receivership and let the receiver clear up the debt I owed concerning the taxes and the insurance, and apply the balance on the contract, and I also stated that I had the $100.00 that could be applied on the contract. I paid the $100.00 on the contract. That was after I went to court. I paid it to J. S. Cruse's office. Mr. Chambers was with me. Before the 9th of May I had paid $80.00. I sent it off on the 5th. I sent it airmail, special delivery."

Although Mr. Jay testified at the main trial, in rebuttal, that he never at any time made an agreement or promise with said appellee that the money collected by the receiver would be credited on the contract payments, the trial court apparently accepted said evidence given by said appellee.

The haste with which said receiver was appointed by the Superior Court under the circumstances portrayed by the testimony of appellee, Otis H. Boatright, Jr., impels us to comment thereon. It seems undisputed that

said appellee was brought before said court by appellants and their said attorney and that the court was then informed that said appellee was without counsel because "it was too short a notice." Although the record, as shown in appellants' brief, appears devoid of any allegation or proof that any grave emergency existed or that great and irreparable harm or loss would result without a receiver, the said court, nevertheless, proceeded then and there to hear the matter and appointed the receiver. It would appear more consonant with substantial justice if said court, under said circumstances, had afforded said appellee an opportunity for reasonable time within which to secure representation by counsel so that all the circumstances leading to any necessity for a receiver and the arrangements, if any, between the parties, as to the nature, scope, and purpose of the receiver's duties and his application of funds received by him could be properly investigated and inquired into for the enlightenment of said court.

The aforesaid quoted evidence of said appellee clearly reflects that he made no opposition to the appointment of the receiver because he held the expressed impression that he had reached an agreement with appellants and their attorney as to the purpose for which the receiver was to be appointed. There is nothing in appellants' brief to show that appellee's said understanding was ever denied or contested at the time of the receivership hearing. In fact, appellants' Exhibit No. 22, pages 9 to 14, both inclusive, put in evidence by appellants at the main trial, which purports to be a transcript of the testimony given at the receivership hearing on May 9, 1958, lends support to said appellee's recital of his said understanding. Appellants' counsel, as shown by said exhibit, made a statement or declaration, as a prelude to a subsequent question, that:

"Q. And the receiver will collect it, *make the payments on the contract,* pay the taxes and insurance and any upkeep. . . ." (Emphasis supplied.)

We are of the opinion that in view of appellants' consistent acceptance of payments by appellees at irregular times and in irregular amounts, as we have heretofore said is revealed by the record evidence before us, the appellants were required to give appellees personal notice of their intention to forfeit the said contract. The prevalent rule in Indiana in such cases is pointedly declared in *Clayton* v. *Fletcher Savings & Trust Co.* (1929) (transfer denied), 89 Ind. App. 431, 155 N. E. 539. Therein, at pages 437, 438 and 444, the court said:

". . . As before stated, if the provision requiring notice of the intention to rescind had been omitted from the contract [as in the present contract], no notice would have been required, and when an installment became delinquent for a period of sixty days [five days in the present contract] the right to forfeit the contract under the law would have been absolute, *if the parties had not by some act waived their right to declare a forfeiture.* If, for instance, it had been their custom and habit to accept payments of purchase price at irregular times and in irregular amounts, more than ten days after a 60-day default in paying the installments, the right to declare a forfeiture of the contract without doubt would have been waived, and *could not ordinarily have been exercised without a personal notice giving the purchaser a reasonable time within which to make payment of the delinquent* installment or installments.
". . .
"Forfeiture is a harsh remedy, not favored in equity, and must yield to the principle of compensation where fair dealing and good conscience seem to demand. Where a party by his indulgence has waived the provision of a contract making the time of payment of money of the essence of the contract, and temporarily sus-

pends the right to declare a forfeiture, *such right can be resumed only by giving a definite and specific notice to that effect.*", citing authority. (The emphasis and bracketed words are ours.)

The legal principle enunciated in the aforesaid Clayton case was adhered to in *Hill* v. *Rogers* (1951) (transfer denied), 121 Ind. App. 708, 99 N. E. 2d 270, and therein the general rule, in harmony with the said Clayton case, as found in 55 Am. Jur. 1023, §630, page 1023, was referred to and quoted from at length. In addition to the cases of *Baker et ux.* v. *Eades* (1930), 90 Ind. App. 664, 169 N. E. 686, and *South Side State Bank* v. *Snyder et ux.* (1931), 92 Ind. App. 433, 176 N. E. 52, the recent case of *Carr et al.* v. *Troutman et al.* (1954), 125 Ind. App. 151, 123 N. E. 2d 243, likewise followed the above referred to rule.

It seems quite clear, we think, that the evidence of record herein manifests circumstances which, to the end of "fair dealing and good conscience," demand the wholesome application of the rule we have just reaffirmed. The appellants "by his [their] indulgence" have "waived the provision" of the contract "making the time of payment of money of the essence of the contract." (Quotations are from the aforesaid Clayton case. The inserted bracketed word is ours.) The above quoted testimony of the appellee, Otis H. Boatright, Jr., as to what transpired at the hearing in Superior Court, Room 2, of Marion County for the appointment of a receiver, was sufficient, in our opinion, to afford the trial court of Hendricks County the reasonable and logical conclusion that even at that time the said appellee justifiably entertained the impression that appellants were resorting to that action only for the purpose of collecting the proceeds from the involved property and applying the same "on the contract, pay the taxes and

insurance and any upkeep." (Quotation from appellants' aforesaid Exhibit 22.)

Appellants rely on *Edwards* v. *Sheehan Construction Co.* (1953), 124 Ind. App. 182, 187, 115 N. E. 2d 750. However, that case is without application on the point here considered. We there adverted to the fact that there was evidence from which the court could conclude that the appellant had acknowledged the termination of the contract, had placed himself in the attitude of a trespasser, and thereafter made inquiry as to what the purchase price would be upon negotiating another sale. Further, it was there held that the notice contained in the letter of the vendor's counsel was sufficient to treat the contract as terminated. Appellants also treat as favorable to them the cases of *St. Germain et al.* v. *Sears Roebuck & Co.* (1942), 112 Ind. App. 412, 44 N. E. 2d 216, *Michael* v. *Mitchell* (1947), 118 Ind. App. 18, 73 N. E. 2d 363, and *Karas et al.* v. *Skouras et al.* (1922), 79 Ind. App. 99, 137 N. E. 289. But those cases involved actions for possession on the ground of non-payment of rent in advance under the provisions of certain leases. In the St. Germain case the lease was for one month, with right of renewal by holding over and paying the stipulated rent *in advance*. The tenant failed to pay the rent in advance at the end of the first month and it was held that the tenant was not entitled to a 30-day written notice to quit. A similar holding was made in the said Michael and Karas cases. Said cases are devoid of pertinent application here.

Appellants, however, persist in their view and further say in their brief: "the appellees by their agreement also agreed that the Waiver by the Appellants of any default should not constitute a waiver of any subsequent default upon their part." We do not find that the contract contains such provision. The contract con-

tains a provision that if any taxes, assessments or insurance premium be not paid when due, or if any installment of the purchase price or interest thereon, shall become delinquent for a period of five (5) days, or if the buyer shall fail to observe or perform any other conditions or terms of the contract, the seller may *"at his option"* cancel *the agreement,* take possession of the real estate, etc., "without any notice or demand whatsoever, the necessity therefor being hereby expressly waived," etc. and said contract further provides: "Failure or delay of the seller to exercise *any option* hereunder . . . shall not operate as a waiver of the right of the seller to *exercise such option* for the same or any subsequent default at any time thereafter." There is no provision in the contract that we can find that a waiver by appellants of any "default" does not constitute a waiver of any subsequent "default" by appellees. As pointed out in *South Side State Bank* v. *Snyder, supra,* the contract contains "an option" in appellants but this was "only an option" that "had not been exercised."

Appellants cite no authority to sustain their said assertion as made. We find nothing in the record showing any steps or notice taken or given by appellants to "cancel the agreement." They did not by their complaint ask for any cancellation of the contract but sought only a judgment for "immediate possession" of the real estate, the appointment of a receiver, and damages. The agreement involved in the above cited case of *Hill* v. *Rogers, supra,* contained a provision similar to the one in the present agreement that the failure of the vendor to exercise an option shall not preclude him from the exercise of the option for any subsequent default, but notwithstanding such provision, the aforementioned rule declared in *Clayton* v. *Fletcher Savings & Trust*

*Co., et al., supra,* was adhered to by this court. In the latter cited case, the involved contract also contained a provision similar to the one quoted above from the instant contract.

Appellants also say that they were not required to give appellees a notice because of that part of §3-1620, Burns' 1946 Replacement, reading as follows:

". . . where the relation of landlord and tenant does not exist—no notice to quit shall be necessary."

*Edwards* v. *Sheehan Construction Co., supra,* wherein the court made reference to said section of said statute, is cited by appellants. Said section of the statute ■ is a part of the original Act of 1881 (Spec. Sess.), being, by title, "An Act concerning landlord and tenant." It has no application to a case such as the present between vendor and vendee where the principles of "equity and fair dealing" are controlling. (Quotation is from *Clayton* v. *Fletcher Savings & Trust Co., supra.*) It must be noted, in explanation of said reference to said section of said statute in said *Edwards* v. *Sheehan Construction Co., supra,* that in that case the vendee (appellant) had acknowledged the termination of the parol contract and had subsequently negotiated for a resale to him of the property and that he "had no equity in said real estate." The complaint in that case sought damages for "occupancy after filing of complaint" and the judgment of the trial court for damages was predicated upon the "fair rental value" of the property for the months of occupancy by the appellant from the time the suit was filed. We find nothing therein or in the said provision of said statute to alter the views we have expressed herein.

Lastly, appellants say: "In order for the appellees . . . to be relieved of their forfeiture for the non-pay-

ment of the installment, taxes and insurance owed by them under the conditional sales contract, it would have been necessary for said appellees to have tendered the amount due to the appellants . . . under said contract." It is apparent that said assertion is based on appellants' assumption that there was an "amount due" them by appellees under the contract. The court did not find any amount due appellants from appellees. Nor did the court find that appellees had forfeited their said contract. The issue presented by appellants' complaint was whether they were entitled to possession of the property and damages. No issue of tender was presented by any pleading. The finding was against appellants on their complaint. We fail, therefore, to see any merit to appellants' said contention.

Finding no reversible error, the judgment is affirmed.

Pfaff, C. J., Bierly, Gonas, JJ., concur.

NOTE.—Reported in 177 N. E. 2d 600.