JOSEPHINE SKENDZEL, JEAN LEGOWSKI AND BERNICE WYSOCKI
*v.* AGNES P. MARSHALL, CHARLES P. MARSHALL AND
ANNA J. BLAIR.

[No. 773S145. Filed October 4, 1973.]

*Richard F. De Tar,* of Indianapolis, *Frank E. Spencer,* of Indianapolis, for appellants.

*Le Roy K. Schultess,* of LaGrange, *Howard E. Petersen,* of LaGrange, for appellees.

HUNTER, J.—Petitioners seek transfer to this Court as a result of an adverse ruling by the Court of Appeals. Plaintiff-respondents originally brought suit to obtain possession of certain real estate through the enforcement of a forfeiture clause in a land sale contract. Plaintiff-respondents suffered a negative judgment, from which they appealed. The Court of Appeals reversed, holding that the defendant-petitioners had breached the contract and that the plaintiff-respondents had not waived their right to enforce the forfeiture provisions of the contract.

In December of 1958, Mary Burkowski, as vendor, entered into a land sale contract with Charles P. Marshall and Agnes P. Marshall, as vendees. The contract provided for the sale of certain real estate for the sum of $36,000.00, payable as follows:

> "$500.00, at the signing, execution and delivery of this contract, the receipt whereof is hereby acknowledged; $500.00 or more on or before the 25th day of December, 1958, and $2500.00 or more on or before the 15th day of January, 1960, and $2500.00 or more on or before the 15th day of January of each and every year thereafter until the balance of the contract has been fully paid, all without

interest and all without relief from valuation and appraisement laws and with attorney fees." (See 289 N. E. 2d at 770.)

The contract also contained a fairly standard section which provided for the treatment of prepayments—but which the Court of Appeals found to be of particular importance. It provided as follows:

"Should Vendees have made prepayments or paid in advance of the payments herein required, said prepayments, if any, shall at any time thereafter be applied in lieu of further principal payments required as herein stated, to the extent of such prepayments only." (Id.)

The following is the forfeiture/liquidated damages provision of the land sale contract.

"It is further agreed that if any default shall be made in the payment of said purchase price or any of the covenants and/or conditions herein provided, and if any such default shall continue for 30 days, then, after the lapse of said 30 days' period, *all moneys and payments previously paid shall, at the option of the Vendor without notice or demand, be and become forfeited and be taken and retained by the Vendor as liquidated damages* and thereupon this contract shall terminate and be of no further force or effect; provided, however, that nothing herein contained shall be deemed or construed to prevent the Vendor from enforcing specific performance of this agreement in the event of any default on the part of the Vendees in complying, observing and performing any of the conditions, covenants and terms herein contained. * * *." (Id.) (Emphasis added.)

The vendor, Mary Burkowski, died in 1963. The plaintiffs in this action are the assignees (under the vendor's will) of the decedent's interests in the contract. They received their assignment from the executrix of the estate of the vendor on June 27, 1968. One year after this assignment, several of the assignees filed their complaint in this action alleging that the defendants had defaulted through non-payment.

The schedule of payments made under this contract was shown by the evidence to be as follows:

| "Date | Amount Paid | Total of Paid Principal |
|-------|-------------|-------------------------|
| 12/1/1958 | $ 500.00 | $ 500.00 |
| 12/25/1958 | 500.00 | 1,000.00 |
| 3/26/1959 | 5,000.00 | 6,000.00 |
| 4/5/1960 | 2,500.00 | 8,500.00 |
| 5/23/1961 | 2,500.00 | 11,000.00 |
| 4/6/1962 | 2,500.00 | 13,500.00 |
| 1/15/1963 | 2,500.00 | 16,000.00 |
| 6/30/1964 | 2,500.00 | 18,500.00 |
| 2/15/1965 | 2,500.00 | 21,000.00" |

(289 N. E. 2d at 770.)

No payments have been made since the last one indicated above—$15,000.00 remains to be paid on the original contract price.

In response to the plaintiff's attempt to enforce the forfeiture provision, the defendants raised the affirmative defense of waiver. The applicable rule is well established and was stated by the Court of Appeals as follows:

"Where a contract for the sale and purchase of land contains provisions similar to those in the contract in the case at bar, *the vendor may waive strict compliance with the provisions of the contract by accepting overdue or irregular payments,* and having so done, equity requires the vendor give specific notice of his intent that he will no longer be indulgent and that he will insist on his right of forfeiture unless the default is paid within a reasonable and specified time." (289 N. E. 2d at 771, emphasis added, *citing*)

"Smeekens v. Bertrand (1969), 144 Ind. App. 656, 248 N. E. 2d 48. (transfer denied); Conner v. Fisher (1964), 136 Ind. App. 511, 202 N. E. 2d 572; McBride v. Griffith, et al. (1962), 134 Ind. App. 12, 185 N. E. 2d 22; Chambers et al. v. Boatright et al. (1961), 132 Ind. App. 378, 177 N. E. 2d 600; Carr et al. v. Troutman et al. (1954), 125 Ind. App. 151, 123 N. E. 2d 243; Hill v. Rogers (1951), 121 Ind. App. 708, 99 N. E. 2d 270 (transfer denied); Clayton v. Fletcher Savings & Trust Co. (1927), 89 Ind. App. 431, 155 N. E. 539 (transfer denied.)"

It follows that where the vendor has not waived strict compliance by acceptance of late payments, no notice is required to

enforce its provisions. (289 N. E. 2d at 771, *citing Conner* v. *Fisher, supra; Clayton* v. *Fletcher Savings & Trust Co., supra.*)

In essence, the Court of Appeals found that there was no waiver because the vendors were obligated to accept prepayment, and, "the payments made, although irregular in time and amount, were prepayments on the unpaid balance through and including the payment due on January 15, 1965." (289 N. E. 2d at 771.) The Court concluded that up to January 15, 1966, "the vendors waived no rights under the contract, because they were obliged to accept prepayment." (Id.) and that, "[t]he vendors could not have insisted on forfeiture prior to January 15, 1966, the date of the first missed payment." (Id.) (We believe the Court of Appeals miscalculated here; the vendors could not have insisted on forfeiture until January 16, 1968.)

If forfeiture is enforced against the defendants, they will forfeit outright the sum of $21,000, or well over one-half the original contract price, as liquidated damages, *plus possession.*

Forfeitures are generally disfavored by the law. *Carr* v. *Troutman* (1954), 125 Ind. App. 151, 123 N. E. 2d 243. In fact, ". . . [e]quity abhors forfeitures and beyond any question has jurisdiction, which it will exercise in a proper case to grant relief against their enforcement." 30 C. J. S., *Equity,* § 56 (1965) and cases cited therein. This jurisdiction of equity to intercede is predicated upon the fact that "the loss or injury occasioned by the default must be susceptible of exact compensation." 30 C. J. S., *supra.*

Pomeroy defines this doctrine of equitable interference to relieve against penalties and forfeitures as follows:

"Wherever a penalty or a forfeiture *is used merely to secure the payment of a debt,* or the performance of some act, or the enjoyment of some right or benefit, equity, considering the payment, or performance, or enjoyment to be the real thing intended by the agreement, and the penalty or

forfeiture to be only an accessory, will relieve against such penalty or forfeiture by awarding compensation instead thereof, proportionate to the damages actually resulting from the non-payment, or non-performance, or non-enjoyment, according to the stipulations of the agreement. The test which determines whether equity will or will not interfere in such cases *is the fact whether compensation can or cannot be adequately made for a breach of the obligation which is thus secured. If the penalty is to secure the mere payment of money, compensation can always be made, and a court of equity will relieve the debtor party upon his paying the principal and interest* . . .

"[The granting of relief in such circumstances is based on the ground that it is wholly against conscience to say that because a man has stipulated for a penalty in case of his omission to do a particular act—*the real object of the parties being the performance of the act*—if he omits to do the act, he shall suffer a loss which is *wholly disproportionate to the injury sustained by the other party.*]" Pomeroy, *Equity Jurisprudence,* § 433, 5th Edition (1941). (Emphasis added.)

Paragraph 17 of the contract, *supra,* provides that all prior payments "become forfeited and be taken and retained by the Vendor as liquidated damages." "Reasonable" liquidated damage provisions are permitted by the law. See 22 Am. Jr., 2d *Damages* § 212 (1965). However, the issue before this Court, is whether a $21,000 forfeiture is a "reasonable" measure of damages. If the damages are unreasonable, i.e., if they are disproportionate to the loss actually suffered, they must be characterized as penal rather than compensatory. See *Melfi* v. *Griscer Industries, Inc.* (1967), 141 Ind. App. 607, 231 N. E. 2d 54; *Czeck* v. *Van Helsland* (1968), 143 Ind. App. 460, 241 N. E. 2d 272. Under the facts of this case, a $21,000 forfeiture is clearly excessive.

The authors of American Law Reports have provided an excellent analysis of forfeiture provisions in land contracts:

"As is frequently remarked, there is no single rule for the determination of whether a contractual stipulation is one for liquidated damages or a penalty, each case depending largely upon its own facts and equities, and this

apothegm is fully applicable to the decisions involving provisions in land contracts for the forfeiture of payments.

"There is a plethora of abstract tests and criteria for the determination of the nature of a contractual provision as one for a penalty or liquidated damages, and in most instances the courts struggle valiantly to make the result reached by them accord reasonably well with one or more of the more prominent of these abstract tests. But it must be observed that, in the last analysis, these factors and criteria are so vague and indefinite that it is doubtful if they are of much aid in construing a specific contractual provision, even assuming that the court makes a conscious and conscientious effort to apply them. At any rate, a reading of the cases collected herein conveys the impression that the ultimate catalyst is the court's belief as to the equities of the case before it.

"Granting this, however, certain tendencies of decision are clearly discernible in the cases. If, for example, the contract involved calls for deferred payments of the purchase price which are relatively small in amount and extend over a number of years, and if it appears that at the time of the purchaser's breach and the consequent invocation of the forfeiture clause by the vendor a comparatively small proportion of the total price remains unpaid, the courts are prone to find that the forfeiture clause was one for a penalty, at least if, as is usually the case, such a holding will tend to give the purchaser another chance to complete the purchase.

"On the other hand, if the amount of the payments received by the vendor at the time the purchase was abandoned represents but a small percentage of the total purchase price, and if the purchaser's breach occurred soon after the execution of the agreement (and particularly if the circumstances indicate that the purchase was made for speculative purposes or that the breach represented an effort on the part of the purchaser to escape an unfortunate turn in the market), the courts tend to hold that the forfeiture clause was one for liquidated damages with the result that the purchaser cannot recover back the payments made." 6 A. L. R. 2d 1401 (1949.)

If we apply the specific equitable principle announced above—namely, that the amount paid be considered in relation to the total contract price—we are compelled to conclude that the $21,000 forfeiture as liquidated damages is incon-

sistent with generally accepted principles of fairness and equity. The vendee has acquired a substantial interest in the property, which, if forfeited, would result in substantial injustice.

Under a typical conditional land contract, the vendor retains legal title until the total contract price is paid by the vendee. Payments are generally made in periodic installments. *Legal* title does not vest in the vendee until the contract terms are satisfied, but equitable title vests in the vendee at the time the contract is consummated. When the parties enter into the contract, all incidents of ownership accrue to the vendee. *Thompson* v. *Norton* (1860), 14 Ind. 187. The vendee assumes the risk of loss and is the recipient of all appreciation in value. *Thompson, supra.* The vendee, as equitable owner, is responsible for taxes. *Stark* v. *Kreyling* (1934), 207 Ind. 128, 188 N. E. 680. The vendee has a sufficient interest in land so that upon sale of that interest, he holds a vendor's lien. *Baldwin* v. *Siddons* (1910), 46 Ind. App. 313, 90 N. E. 1055.

This Court has held, consistent with the above notions of equitable ownership, that a land contract, once consummated constitutes a present sale and purchase. The vendor " 'has, in effect, exchanged his property for the unconditional obligation of the vendee, the performance of which is secured by the retention of the legal title.' " *Stark v. Kreyling, supra,* at 135. The Court, in effect, views a conditional land contract as a sale with a security interest in the form of legal title reserved by the vendor. Conceptually, therefore, the retention of the title by the vendor is the same as reserving a lien or mortgage. Realistically, vendor-vendee should be viewed as mortgagee-mortgagor. To conceive of the relationship in different terms is to pay homage to form over substance. See *Principles of Equity,* Clark, 4th edition, Sec. 9, p. 23.

The piercing of the transparent distinction between a land contract and a mortgage is not a phenomenon without prece-

dent. In addition to the *Stark* case, *supra,* there is an abundance of case law from other jurisdictions which lends credence to the position that a land sales contract is in essence a mortgage:

> "While the legal title remains in the vendor, the vendee in possession acquires an equitable title and the vendor holds the legal title in trust as it were for the vendee. There is an equitable conversion so that while the heirs of the vendor in case of his death must make conveyance of the legal title, the rights of the vendor under a contract, in case of his death intestate, pass to his representatives rather than to his heirs; the title of the vendee in possession is such that in the event of his death intestate, his interest in the realty descends to his heirs; so that, following the doctrine that equity deems that as done which ought to be done, the vendee in possession for all practical purposes becomes the owner of the property with all the rights of an owner in the operation of it, subject only of course to the terms of the contract; the vendor holds the legal title as security for the performance of the contract, but in effect has a vendor's lien upon the property; the status of the parties is somewhat analogous to that of mortgagor and mortgagee. 3 Pomeroy's Equity Jurisprudence (4th Ed.), p. 3042, § 1261; Champion v. Brown, 6 Johns. Ch. 398, 10 Am. Dec. 343; Sewell v. Underhill, 197 N. Y. 168, 90 N. E. 430, 27 L. R. A. (N. S.), 233, 134 Am. St. Rep. 863, 18 Am. Cas. 795." *Conners* v. *Winans* (1924), 122 Misc. 824, 204 N. Y. Supp. 142, 145;

> "Where one contracts to convey real estate to another upon the payment of the agreed price, retaining the title until payment is fully made, it is not very important, in our opinion, what the security so retained is called, whether a trust, a vendor's lien, an equitable mortgage, an equitable security, or any other kind of a lien. Like the Supreme Court of Tennessee:

>> " 'We are not able to draw any sensible distinction between the cases of a legal title conveyed to secure the payment of a debt, and a legal title retained to secure the payment of a debt. In both cases, courts of chancery consider the estate only as security for the payment of the debt, upon a discharge of which the debtor is entitled to a conveyance in one instance, and a reconveyance in the other.' Graham v. McCampbell, 19 Tenn. 52, 33 Am. Dec. 126.

"Where the title is retained by the seller as security for the payment of the debt, the security is, in this country, very generally regarded as possessing all the essential features of a mortgage, and the vendor as standing for all practical purposes as mortgagee in relation to the vendee. See 29 Cyc. pp. 770, 771, and notes; Hardin v. Boyd, 113 U.S. 764, 5 Sup. Ct. 771, 28 L. Ed. 1141; Lewis v. Hawkins, 90 U.S. 126, 23 L. Ed. 113; Wheeling Bridge & T. Ry. Co. v. Reymann Brewing Co., 90 Fed. 189, 32 C. C. A. 571; Seattle L. S. & E. Ry. Co. v. Union Trust Co., 79 Fed. 179, 24 C. C. A. 296. And as such, he seems to be regarded by statute in Idaho. Rev. St. Idaho 1887, §§ 3440, 4520, and 4521." *Ferguson* v. *Blood* (1907), 82 C. C. A. 482, 152 Fed. 98, 103; cited with approval in 243 F. 2d 478 and 373 P. 2d 565;

". . . The position of a vendor in a land contract is in many respects similar to that of an equitable mortgagee. In an early case, Button v. Schroyer, 5 Wis. 598, in speaking of the relationship of a vendor and vendee in a land contract, the court said:

" 'The relation between the parties is analogous to that of equitable mortgagor and mortgagee. The former has an equity of redemption, the latter has the correlative right of foreclosure.' " *Harris* v. *Halverson* (1927), 192 Wis. 71, 211 N. W. 295, 297;

"This court has several times said that—'Where a vendor sells land, takes the notes of the vendee for the purchase money, and executes to him a bond for title, the effect of the contract in equity is to create a mortgage in favor of the vendor upon the land to secure the purchase money subject to all the essential incidents of a mortgage.' Newman v. Mountain Park Land Co., 85 Ark. 208, 107 S. W. 391, 122 Am. St. Rep. 27; Strauss v. White, 66 Ark. 170, 51 S. W. 64, and cases there cited." *Fairbairn* v. *Pofahl* (1920), 144 Ark. 313, 222 S. W. 16, 17;

" 'Where a sale of land is evidenced by a contract only, and the purchase price has not been paid, and the vendor retains the legal title, the parties occupy substantially the position of mortgagor and mortgagee. The vendor has a lien for his purchase money by virtue of his contract.' Roby v. Bismarck National Bank, 4 N. D. 156, 160, 59 N. W. 719, 720, 50 Am. St. Rep. 633. See, also, First National Bank v. Zook, 50 N. D. 423, 429, 196 N. W. 507, 509.

"The general rule is that where in a contract for sale the vendor reserves title, 'the transaction creates in equity the relation of mortgagor and mortgagee.' " *D. S. B. Johnston*

*Land Co.* v. *Whipple* (1930), 60 N. D. 334, 234 N. W. 59, 61. See also 77 A. L. R. 270 and cases cited therein.

It is also interesting to note that the drafters of the Uniform Commercial Code abandoned the distinction between a conditional sale and a security interest. Section 1-201 of the UCC (IC 1971, 26-1-1-201 (Ind. Ann. Stat. § 19-1-201 [1964 Repl.])) defines "security interest" as "an interest in personal property or fixtures which secures payment or performance of an obligation . . . retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer is limited in effect to a reservation of 'security interest.' " We can conceive of no rational reason why conditional sales of real estate should be treated any differently.[1]

A conditional land contract in effect creates a vendor's lien in the property to secure the unpaid balance owed under the contract. This lien is closely analogous to a mortgage—in fact, the vendor is commonly referred to as an "equitable mortgagee." *D. S. B. Johnston Land Co.* v. *Whipple, supra; Harris* v. *Halverson, supra.* In view of this characterization of the vendor as a lienholder, it is only logical that such a lien be enforced through foreclosure proceedings. Such a lien "has all the incidents of a mortgage" (*D. S. B. Johnston Land Co.* v. *Whipple, supra,* at 61), one of which is the right to foreclose.

There is a multitude of cases upholding the vendor's right to foreclose. (See 77 A. L. R. 276, and the cases cited therein.) The remedy is most often referred to as a foreclosure of an

---

1. In fact, the Commissioners on Uniform State Laws have recognized the transparency of any such distinctions. Section 3-102 of the Uniform Land Transactions Code (working draft of first tentative draft) reads as follows:

"This Article applies to security interests created by contract, including mortgage . . . land sales contract . . . and any other lien or title retention contract intended as security."

We believe this position is entirely consistent with the evolving case law in the area.

executory contract. (A land contract is "executory" until legal title is actually transferred to the vendee.) A 1924 New York case best describes this remedy:

> "Out of the nature of the relationship created by a land contract, where the vendee is in possession, there have developed certain equitable remedies, among which is the right of the vendor in a proper case to sell out the interest of the vendee for the purpose of satisfying his lien under the contract, in case of default, and while it seems a misnomer, for convenience this remedy is spoken of as foreclosure, and the action as one to foreclose the contract. 3 Pomeroy's Equity Jurisprudence (4th Ed.) 3046, § 1262." *Conners* v. *Winans* (1924), 122 Misc. 824, 204 N. Y. Supp. 142, 145. See also, *Keller* v. *Lewis* (1878), 53 Cal. 113, for another excellent characterization.

The foreclosure of a land sale contract is undeniably comprehended by our Trial Rules. TR. 69 (c) deals with the foreclosure of liens upon real estate:

> "Unless otherwise ordered by the court, *judicial foreclosure of all liens upon real estate shall be conducted under the same rules and the sale procedures applicable to foreclosure of mortgages upon real estate, including without limitation redemption rights, manner and notice of sale, appointment of a receiver, execution of deed to purchaser and without valuation and appraisement.* Judicial lien foreclosures including mortgage foreclosures may be held at any reasonable place stated in the notice of sale. In all cases where a foreclosure or execution sale of realty is not confirmed by the court, the sheriff or other officer conducting the sale shall make a record of his actions therein in his return to be filed promptly with the record of the case and also in the execution docket maintained in the office of the clerk." (Emphasis added.)

The vendor's interest clearly constitutes a "lien upon real estate" and should, therefore, be treated as one. The basic foreclosure statute—that is for mortgages executed after July 1, 1957—provides for a six-month period of redemption, commencing with the filing of the complaint. Additionally, it establishes the procedures attendant to the foreclosure sale. The statute reads as follows:

*"Mortgages executed after July 1, 1957—Time of issuing execution—Sale—Notices.*—In any proceeding for the foreclosure of any mortgage hereafter executed on real estate, no process shall issue for the execution of any such judgment or decree of sale for a period of six [6] months after the filing of a complaint in any such proceeding: Provided, That such period shall be twelve [12] months in any such proceeding for the foreclosure of any mortgage executed prior to July 1, 1957. Thereafter, upon the filing of a praecipe therefor by any judgment creditor in said proceeding a copy of the judgment and decree shall be issued and certified by the clerk under the seal of the court, to the sheriff, who shall thereupon proceed to sell the mortgage premises or so much thereof as may be necessary to satisfy the judgment, interest and costs, at public auction at the door of the court house of the county in which said real estate is situated, by advertising the same by publication once each week for three [3] successive weeks in a daily or weekly newspaper of general circulation printed in the English language and published in the county where the real estate is situated, the first of which publications shall be made at least thirty [30] days before the date of sale; and by posting written or printed notices thereof in at least three [3] public places in the township in which the real estate is situated, and at the door of the courthouse of the county:

Provided, That if the sheriff be unable to procure the publication of such notice within such county he may dispense with such publication but he shall in his return state his inability to procure such publication and the reason therefor. [Acts 1931, ch. 90, § 1, p. 257; 1957, ch. 220, § 1, p. 476.]" IC 1971, 32-8-16-1 (Ind. Ann. Stat. § 3-1801 [1968 Repl.]).

TR. 69 (C) requires that the procedures outlined in the above statute be applied "without limitation" to the "judicial foreclosure of all liens upon real estate." We believe there to be great wisdom in requiring judicial foreclosure of land contracts pursuant to the mortgage statute. Perhaps the most attractive aspect of judicial foreclosure is the period of redemption, during which time the vendee may redeem his interest, possibly through refinancing.

Forfeiture is closely akin to strict foreclosure—a remedy developed by the English courts which did not contemplate

the equity of redemption. American jurisdictions, including Indiana, have, for the most part, rejected strict foreclosure in favor of foreclosure by judicial sale:

> "The doctrine of strict foreclosure developed in England at a time when real property had, to a great extent, a fixed value; the vastly different conditions in this country, in this respect, led our courts to introduce modifications to the English rules of foreclosure. Generally, in consonance with equity's treatment of a mortgage as essentially a security for the payment of the debt, foreclosure by judicial sale supplanted strict foreclosure as the more equitable mode of effectuating the mutual rights of the mortgagor and mortgagee; and there is at the present time, in the majority of the American states, no strict foreclosure as developed by the English courts—either at law or in equity —by which a mortgagee can be adjudged absolute owner of the mortgaged property. The remedy of the mortgagee is by an action for the sale of the mortgaged premises and an application of the proceeds of such sale to the mortgage debt, and although usually called an action to foreclose, it is totally different in its character and results from a strict foreclosure. The phrase 'foreclosure of a mortgage' has acquired, in general, a different meaning from that which it originally bore under the English practice and the common law imported here from England. In this country, the modern meaning of the term 'foreclosure' denotes an equitable proceeding for the enforcement of a lien against property in satisfaction of a debt." 55 Am. Jur. 2d, *Mortgages,* § 549 (1971).

Guided by the above principles, we are compelled to conclude that judicial foreclosure of a land sale contract is in consonance with the notions of equity developed in American jurisprudence. A forfeiture—like a strict foreclosure at common law—is often offensive to our concepts of justice and inimical to the principles of equity. This is not to suggest that a forfeiture is an inappropriate remedy for the breach of *all* land contracts. In the case of an abandoning, absconding vendee, forfeiture is a logical and equitable remedy. Forfeiture would also be appropriate where the vendee has paid a minimal amount on the contract at the time of default and seeks to retain possession while the

vendor is paying taxes, insurance, and other upkeep in order to preserve the premises. Of course, in this latter situation, the vendee will have acquired very little, if any, equity in the property. However, a court of equity must always approach forfeitures with great caution, being forever aware of the possibility of inequitable dispossession of property and exorbitant monetary loss. We are persuaded that forfeiture may only be appropriate under circumstances in which it is found to be consonant with notions of fairness and justice under the law.

> *In other words, we are holding a conditional land sales contract to be in the nature of a secured transaction, the provisions of which are subject to all proper and just remedies at law and in equity.*

Turning our attention to the case at hand, we find that the vendor-assignees were seeking forfeiture, including $21,000 already paid on said contract as liquidated damages and immediate possession. They were, in fact, asking for strict application of the contract terms at law which we believe would have led to unconscionable results requiring the intervention of equity. "Equity delights in justice, but that *not* by halves." (Story, *Eq. Pl.* § 72.) On the facts of this case, we are of the opinion that the trial court correctly refused the remedy sought by the vendor-assignees, but in so refusing it denied all remedial relief to the plaintiffs. Equity will "look upon that as done which ought to have been done." (Story, *Eq. Jur.* § 64(g)). Applying the foregoing maxims to the case at bar, where such parties seek unconscionable results in such an action, equity will treat the subject matter as if the final acts and relief contemplated by the parties were accomplished exactly as they should have been in the first instance. Where discretionary power is not exercised by a trial court, under the mistaken belief that it was without this power, a remand and direction by a court of review is necessary and proper. 5 Am. Jur. 2d § 773, p. 216,

n.3 (cases cited therein). This is not an unwarranted interference with the trial court's function. Upon appeal to this Court, we have the judicial duty to *sua sponte* direct the trial court to apply appropriate equitable principles in such a case. 5 Am. Jur. 2d, § 656, p. 107, citing: *Mark* v. *Kahn* (1956), 333 Mass. 517, 131 N. E. 2d 758, 53 A. L. R. 2d 908. Consistent with such above-stated rules, this Court has the undeniable authority to remand with guidelines which will give substantial relief to plaintiffs under their secured interests and will prevent the sacrifice of the vendees' equitable lien in the property.

For all of the foregoing reasons, transfer is granted and the cause is reversed and remanded with instructions to enter a judgment of foreclosure on the vendors' lien, pursuant to Trial Rule 69(C) and the mortgage foreclosure statute (IC 1971, 32-8-16-1 (Ind. Ann. Stat., § 3-1801 [1968 Repl.])) as modified by Trial Rule 69(C). Said judgment shall include an order for the payment of the unpaid principal balance due on said contract, together with interest at 8% per annum from the date of judgment. The order may also embrace any and all other proper and equitable relief that the court deems to be just, including the discretion to issue a stay of the judicial sale of the property, all pursuant to the provisions of Trial Rule 69(C). Such order shall be consistent with the principles and holdings developed within this opinion.

Reversed and remanded with instructions.

Arterburn, C.J., DeBruler and Prentice, JJ., concur in this opinion on the merits; Prentice, J., filing an additional statement; Given, J., dissents.

## CONCURRING STATEMENT

PRENTICE, J.—I have some concern that our opinion herein might be viewed by some as indicating an attitude of indifference towards the rights of contract vendors. Such a view would not be a true reflection.

Because the installment sales contract, with forfeiture provisions, is a widely employed and generally accepted method of commerce in real estate in this state, it is appropriate that a vendee seeking to avoid the forfeiture, to which he agreed, be required to make a clear showing of the inequity of enforcement. In any given transaction anything short of enforcing the forfeiture provision may be a denial of equity to the vendor. It has been set forth in the majority opinion that if the vendee has little or no real equity in the premises, the court should have no hesitancy in declaring a forfeiture. It follows that if the vendee has indicated his willingness to forego his equity, if any, whether by mere abandonment of the premises, by release or deed or by a failure to make a timely assertion of his claim, he should be barred from thereafter claiming an equity.

If the court finds that forfeiture, although provided for by the terms of the contract, would be unjust, it should nevertheless grant the vendor the maximum relief consistent with equity against a defaulting vendee. In so doing, it should consider that, had the parties known that the forfeiture provision would not be enforceable, other provisions for the protection of the vendor doubtlessly would have been incorporated into the agreement. Generally, this would require that the transaction be treated as a note and mortgage with such provisions as are generally included in such documents customarily employed in the community by prudent investors. Terms customarily included in such notes and mortgages but frequently omitted from contracts include provisions for increased interest during periods of default, provision for the acceleration of the due date of the entire unpaid principal and interest upon a default continuing beyond a reasonable grace period, provisions for attorneys' fees and other expenses incidental to foreclosure, for the waiver of relief from valuation and appraisement laws and for receivers.

NOTE.—Reported in 301 N. E. 2d 641.