**FIRST FEDERAL SAVINGS BANK, Appellant–Plaintiff,**

v.

**Donald HARTLEY and Joyce Hartley, Appellees–Defendants.**

**No. 85A04–0305–CV–233.**

Court of Appeals of Indiana.

Nov. 24, 2003.

---

Stephen H. Downs, Tiede, Metz & Downs, Wabash, IN, Attorney for Appellant.

Bruce N. Munson, Muncie, IN, Attorney for Appellees.

## OPINION

BROOK, Chief Judge.

### Case Summary

Appellant-plaintiff First Federal Savings Bank ("the Bank") appeals a judgment in favor of appellees-defendants Donald and Joyce Hartley. We reverse.

### Issue

In this foreclosure action, the trial court subordinated the Bank's mortgage lien to the Hartleys' claim for money they spent improving a parcel of real estate on which the Bank has a mortgage. The Bank challenges this priority determination.

### Facts and Procedural History

The facts most favorable to the judgment reveal that on October 23, 1996, Gregory Blatz[1] executed a promissory note ("Note") with the Bank for $200,000 to establish a line of credit, which he planned to use to purchase investment real

---

1. To be precise, the mortgage was entered into by Gregory Blatz and Douglas Blatz. However, after the Bank filed its complaint, Douglas Blatz executed and delivered to the Hartleys his quitclaim deed conveying his interest in the property to them. Since by the time of trial, Douglas Blatz had no interest in the real estate, reference herein is made only to Gregory Blatz.

estate. On April 7, 1997, the Bank, pursuant to the note, advanced to Blatz $32,000 to purchase a parcel of real estate located at 8861 Jannie Lane, Silver Lake, Indiana. Blatz signed a mortgage on the Jannie Lane property with the Bank, which in turn properly recorded it on April 22, 1997.

From October 23, 1996 through the date of trial, the balance due on the Note was refinanced into subsequent promissory notes. During that time, Blatz made only interest payments to the Bank except when a particular property was sold, in which case Blatz would deliver the net proceeds to the Bank for release of its mortgage with regard to that particular property. Blatz made no principal payments toward the $32,000 loaned by the Bank for his purchase of the Jannie Lane property. By the time of trial, the Bank's mortgage on the Jannie Lane property remained of record and unsatisfied.

On September 1, 1997, Blatz entered into a land contract to sell the Jannie Lane property to the Hartleys. The land contract, which was recorded on September 5, 1997, states that the property "is presently subject to a mortgage." Appellant-plaintiff's Ex. 8. Indeed, the Hartleys understood that the Jannie Lane property was subject to a mortgage, but did not know which financial institution held the mortgage. Immediately after signing the land contract, the Hartleys moved into the Jannie Lane property. From 1997 until 2001, they made monthly payments under the land contract and spent $6,142.87 on improvements to the property. During that time, the Hartleys did not inquire as to the mortgage's status or attempt to secure a release. On May 15, 2001, the Hartleys delivered to Blatz the $30,0237.13 balance then due and obtained deeds from Blatz for the Jannie Lane property. However, rather than paying the proceeds to the Bank and securing a release of the Bank's

mortgage on the Jannie Lane property, Blatz deposited the $30,237.13 into an account at the Bank in the name of Empire Home Buyers.

The Bank was unaware that the Hartleys had any interest in the Jannie Lane property until mid-2001 when it reviewed the results of a title search obtained in anticipation of filing a foreclosure complaint against Blatz. Blatz had defaulted on his payments due under the Note. By October 2002, the balance due thereon was $1,007,796.73, plus interest accruing after October 4, 2002 and attorney's fees. The Bank named the Hartleys as parties to the complaint against Blatz because of their interest in the Jannie Lane property. At the November 14, 2002 trial, the Hartleys asserted a claim seeking reimbursement of the monies they spent on improvements. In its "Findings of Fact, Conclusions of Law and Judgment on Claim Against the Hartleys and on Hartley Counterclaim," the trial court recognized the validity of the Bank's mortgage and foreclosed that mortgage, but held that the first $6,142.87 from the sale of the Jannie Lane property should be paid to the Hartleys. In pertinent part, the judgment reads:

THE COURT NOW CONCLUDES:

18. The Bank's April 7, 1997 mortgage on the Jannie Lane property was recorded prior to the Hartleys' contract, and its mortgage lien is therefore entitled to priority over the interests of the Hartleys, to the extent it secures the purchase price of the Jannie Lane property and other amounts due under the note and mortgage related thereto.

19. Any title delivered to the Hartleys by the Blatz deeds is likewise subject to the Bank's mortgage lien.

20. There was no evidence presented at trial which permits the Court to find that any of the following allegations of the Hartleys have been proven.

20.1 the Bank intentionally interfered with the Contract between the Hartleys and Greg Blatz;

20.2 the Bank's mortgage was unconscionable;

20.3 the Bank had an obligation to notify the Hartleys of its mortgage lien;

20.4 the Bank made a virtual debtor out of the Hartleys;

20.5 the Bank violated the Uniform Consumer Credit Code;

20.5[sic] the Bank had an obligation to provide the Hartleys with notice of Blatz's default;

20.6 the Bank precluded [the] Hartleys' ability to make payments directly to the Bank;

20.7 the Bank had reason to know that the $30,237.13 paid by Hartleys was deposited into an account at the Bank under the name of the Empire Home Buyers;

20.8 the Bank should have seized the $30,237.13 from the Empire Home Buyers' account even though Empire Home Buyers was not indebted to the Bank;

20.9 the Bank should have credited the $30,237.13 deposited into the Empire Home Buyers account against the April 30, 2001 promissory note and delivered its release of mortgage on the Jannie Lane property, even though that amount was withdrawn from the Empire Home Buyers account and never applied against the indebtedness secured by the Jannie Lane mortgage; and/or

20.10 the Bank has an obligation to release its mortgage on the Jannie Lane property even though that mortgage has not been paid.

21. The Hartleys shall take nothing by way of their counter-claims.

22. *However, the Hartleys' improvements to and maintenance of the real estate were of benefit to the Bank, and it would be inequitable not to reimburse [the] Hartleys for those improvements under the circumstances presented to the Court by this case.*

IT IS THEREFORE ORDERED ADJUDGED AND DECREED AS FOLLOWS:

1. Judgment on the above findings and conclusions is now entered in favor of the Bank and against the Hartleys.

2. Upon this court entering its decree of foreclosure providing for the sale of the Jannie Lane property via sheriff's sale, the decree shall provide that the proceeds of sale be paid in the following order:

a. To the payment of the costs of this action, together with the costs and expenses of the Sheriff's sale of the property.

b. To the payment of the Hartleys in the amount of $6,142.87.

c. To the payment of the Bank in the amount of $32,000 plus interest on said sum at the rate provided for in the April 30, 2001 promissory note until entry of a decree of foreclosure, and at the statutory rate of interest thereafter, plus payment of the Bank's attorney's fees and expenses incurred in this cause in relation to the Jannie Lane property.

d. To the payment of the Hartleys in the amount of any judgment entered in this cause in their favor and against Greg Blatz.

Appellant's App. at 24–26 (emphasis added) (footnote omitted). The Bank appeals.

### Discussion and Decision

Our standard of review provides that we "shall not set aside the findings or judg-

ment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." *See* Ind. Trial Rule 52(A). In applying this rule, we employ a two-tiered standard of review. *OVRS Acquisition Corp. v. Community Health Servs., Inc.,* 657 N.E.2d 117, 123–24 (Ind.Ct.App. 1995), *trans. denied.* First, we consider whether the evidence supports the findings, construing the findings liberally in support of the judgment. *Id.* at 124. The findings are clearly erroneous only when a review of the record leaves us firmly convinced a mistake has been made. *Id.*

> Next, we determine whether the findings support the judgment. A judgment is clearly erroneous when it is unsupported by the findings of fact and conclusions thereon. In applying this standard, we will neither reweigh the evidence nor judge the credibility of the witnesses. Rather, we consider the evidence that supports the judgment and the reasonable inferences to be drawn therefrom. We must affirm the judgment of the trial court unless the evidence points incontrovertibly to an opposite conclusion.

*Wagner v. Estate of Fox,* 717 N.E.2d 195, 200 (Ind.Ct.App.1999) (citations omitted).

■ Neither party disputes the findings of facts. Hence, we focus our review upon the latter tier of the analysis, whether the findings support the judgment. Specifically, we concentrate upon conclusion number 22, in which the court stated: "However, the Hartleys' improvements to and maintenance of the real estate were of benefit to the Bank, and it would be inequitable not to reimburse [the] Hartleys for those improvements under the circumstances presented to the Court by this case."

■ "[T]he vast weight of authority holds that foreclosure actions are essentially equitable." *Songer v. Civitas Bank,*

771 N.E.2d 61, 69 (Ind.2002); *see also Smith v. Federal Land Bank of Louisville,* 472 N.E.2d 1298, 1302 (Ind.Ct.App. 1985) ("In Indiana, 'there is no doubt' that an action to foreclose a mortgage or lien is essentially equitable."). Notwithstanding equity's influence, rules of law obviously guide the foreclosure process. *See, e.g.,* Ind.Code §§ 32–30–10–1 through –14 (setting out procedures for mortgage foreclosure actions). Moreover, "where substantial justice can be accomplished by following the law, and the parties' actions are clearly governed by rules of law, equity follows the law." *Lake County Auditor v. Bank Calumet,* 785 N.E.2d 279, 281 (Ind.Ct.App.2003).

Here, by requiring that "the payment of costs of the action, together with the costs and expenses of the Sheriff's sale of the property" be paid before either the Bank or the Hartleys, the trial court followed the first part of the statutorily mandated disposition for foreclosure. *See* Ind.Code § 32–30–10–14(1). However, in thereafter prioritizing the Hartleys' claim for improvements over the Bank's mortgage the trial court seems to have deviated from the law's requirements.

In *Skendzel v. Marshall,* 261 Ind. 226, 301 N.E.2d 641 (1973), *cert. denied,* 415 U.S. 921, 94 S.Ct. 1421, 39 L.Ed.2d 476 (1974), our supreme court stated:

> The Court, in effect, views a conditional land contract as a sale with a security interest in the form of legal title reserved by the vendor. Conceptually, therefore, the retention of title by the vendor is the same as reserving a lien or mortgage. Realistically, vendor-vendee should be viewed as mortgagee-mortgagor. To conceive of the relationship in different terms is to pay homage to form over substance.

261 Ind. at 234, 301 N.E.2d at 646. That is, land contracts have been treated similarly to mortgages.

Regarding priority of mortgages and similar interests, our legislature has provided:

> A conveyance, mortgage, or lease takes priority according to the time of its filing. The conveyance, mortgage, or lease is fraudulent and void as against any subsequent purchaser, lessee, or mortgagee in good faith and for a valuable consideration if the purchaser's, lessee's, or mortgagee's deed, mortgage, or lease is first recorded.

Ind.Code § 32–21–4–1(b). "Generally, where there are two competing mortgages claiming priority in a foreclosure setting, application of the recording statute would resolve the dispute." *Bank of New York v. Nally*, 790 N.E.2d 1071, 1074 (Ind.Ct.App. 2003).

The Bank properly recorded its mortgage on the Jannie Lane property on April 22, 1997. The land contract between Blatz and the Hartleys was recorded on September 5, 1997. Having recorded its interest first, the Bank should have priority over the land contract according to the recording statute. *See* Ind.Code § 32–21–4–1(b). Thus, to the extent the Hartleys' claim for improvements is attached[2] to their land contract, the Bank's mortgage should trump the subsequent claim for improvements.

■ We note that a bona fide purchaser for value without notice may seek equitable protection from application of the recording statute. *Bank of New York*, 790 N.E.2d at 1074. However, the trial court, if it relied on such a theory, did not mention it. Moreover, the Hartleys wisely do not attempt to circumvent the recording statute by claiming bona fide purchasers for value without notice status. Indeed, the Hartleys admitted that they knew the Jannie Lane property was subject to a mortgage (as it was written into the land contract). While the Hartleys may not have known which lending institution held the mortgage, a quick check of the recorder's office would have revealed such information. Hence, they do not meet the "without notice" requirement. Unfortunately for the Hartleys, one who fails to search property records acts at his own peril, jeopardizing his interest against prior interest holders of record. *See Wienke v. Lynch*, 407 N.E.2d 280, 286 (Ind.Ct.App. 1980).

■ It is possible that the trial court viewed the Hartleys' $6,142.87 improvements claim as akin to a mechanic's lien. However, even ignoring the fact that the Hartleys did not comply with the statutory requirements necessary to create a valid lien, *see* Ind.Code § 32–28–3–3, mechanics liens take priority only over interests *subsequently* created. Ind.Code § 32–28–3–5(b). Moreover, mechanics' liens are not rendered superior to the lien of a prior recorded mortgage by the fact that the security of the latter is increased by the improvement. *See Thorpe Block Sav. & Loan Ass'n v. James*, 41 N.E. 978, 978,13 Ind.App. 522, 522 (1895). Applied here, while the Jannie Lane property may have been improved by the Hartleys' work and may eventually sell for a higher price than it would have had they not done the work, their improvements claim cannot take pri-

---

**2.** *See Miles Homes of Indiana, Inc. v. Harrah Plumbing and Heating Serv. Co., Inc.,* 408 N.E.2d 597, 600 (Ind.Ct.App.1980) (noting that when vendees defaulted on a land contract thereby extinguishing their interest in the land, the mechanic's lien, which was attached to the land contract, could no longer be foreclosed upon as it too was extinguished).

ority over the Bank's prior recorded mortgage.

In summary, the Hartleys stand to lose the lakehouse for which they paid all money due under the land contract, as well as additional money for improvements, because Blatz failed to pay off the mortgage. However, the Hartleys knew that the Jannie Lane property was subject to a recorded mortgage when they made payments to Blatz and voluntarily undertook the improvements. On the other hand, the Bank properly recorded its mortgage, had no obligation to separately notify the Hartleys of the mortgage or its status, did not preclude the Hartleys from making payments directly to the Bank, and did not interfere with the land contract. Given these facts and the law as stated above, we cannot affirm the trial court's conclusion that the Hartleys' improvements claim on the land contract should be paid before the Bank's properly recorded mortgage. While we sympathize with the Hartleys' situation, we note that their remedies, if any, lie in (1) an action against Blatz, and (2) the possibility that the improved property will sell for a price high enough to pay off the Bank first and still leave sufficient funds to reimburse them.

Reversed.

BAKER, J., and SHARPNACK, J., concur.