PRAMCO III, LLC, Appellant–Defendant,

v.

Steven Douglas YODER, City of Logansport, Donald J. Tribbett, Esq., Catariono Arellano and Jose C. Arellano, Appellee.

Jose C. Arellano, Cross–Claim Plaintiff,

v.

Steven Douglas Yoder, Cross–Claim Defendant,

Jose C. Arellano, Counterclaim Plaintiff,

v.

Pramco III, LLC., Counterclaim Defendant.

No. 09A02–0611–CV–992.

Court of Appeals of Indiana.

Oct. 15, 2007.

Michael A. Trippel, Jacob S. Frost, Elkhart, IN, Attorneys for Appellant.

Joseph N. Williams, Logansport, IN, Attorney for Appellee.

## OPINION

BARTEAU, Senior Judge.

### STATEMENT OF THE CASE

Plaintiff–Appellant/Counterclaim Defendant Pramco III, LLC ("Pramco") appeals from the trial court's findings of fact, conclusions of law and order in the foreclosure action Pramco instituted against Defendant–Appellee/Cross–Claim Defendant Steven Yoder ("Yoder") and Defendant–Appellee/Cross–Claim Plaintiff/Counterclaim Plaintiff Jose Arellano [1] ("Arellano").

We affirm.

### ISSUES

Pramco challenges two of the trial court's findings and one of the trial court's conclusions of law, more specifically:

1. Whether the evidence supports the finding regarding payments made to Yoder by Arellano on a land sale contract?

2. Whether the evidence supports the finding regarding a request made by Yoder for an accounting of payments made by Arellano and forwarded to First National Bank by Yoder?

3. Whether the trial court correctly concluded that equitable relief was appropriate in this situation where foreclosure was sought?

Arellano raises the additional issue of his entitlement to damages, costs, and attorney fees pursuant to Ind. Appellate Rule 66(E).

### FACTS AND PROCEDURAL HISTORY

Yoder executed a promissory note with the First National Bank & Trust of Kokomo ("the Bank") in the amount of $33,000.00. As security for the note, Yoder executed a mortgage on real estate located at 136 W. Linden Avenue, in Logansport, Indiana ("the Property"). The note provided that it was due and payable in one single payment of all unpaid principal and accrued interest on January 30, 2002. The mortgage was recorded in the Cass County Recorder's Office on July 31, 2001.

On January 14, 2002, Arellano and Yoder entered into a land sale contract for the Property. Arellano agreed to pay Yoder $54,000.00 to purchase the Property. Further, Arellano agreed to tender $15,000.00 as a down payment on the Property. Arellano would then make monthly payments of $790.00 for five years. Yoder was to provide Arellano with the principal amount of the loan, the name and address of the mortgage holder, the installments payable on the loan, among other terms. Arellano testified that Yoder did not fulfill this part of the agreement. At the conclusion of the term for the contract, the purchase price was to be paid in full by Arellano and Yoder would convey marketable title by warranty deed. The land sale contract for the Property was recorded in

---

**1.** Catarino Arellano also was a party to the land sale contract with Yoder. Counsel for the brothers refers only to Jose in the appellee's brief; therefore, we refer only to him when referring to the interests of the brothers in the Property.

the Cass County Recorder's Office on January 16, 2002.

Yoder executed a second promissory note with the Bank on March 26, 2002, for $300,000.00. The note indicates that it is secured, in part, by the previously executed mortgage on the Property. After executing the land sale contract, Yoder informed the Bank that he had entered into a contract to sell the Property to Arellano. Yoder informed the Bank that he would turn over all of Arellano's payments, including the down payment, to the Bank in order to reduce the mortgage indebtedness on the Property. Yoder requested that the Bank make a separate accounting of the payments in order to apply those funds to the mortgage indebtedness on the Property. The Bank did not make a separate accounting of the payments, but applied the payments toward Yoder's overall debt.

On November 21, 2003, Yoder filed a Chapter 11 bankruptcy petition. The Property was listed as security for the then, $659,000.00 Yoder owed the Bank. On September 1, 2004, Yoder and the Bank entered into a stipulation that showed that Yoder's debt to the Bank was secured by 13 mortgages on 13 parcels of real estate including the Property. Yoder was to make monthly payments to the Bank of $6,000.00 per month for the first year, and $7,000.00 per month for the second year, etc., and that Yoder would execute a new promissory note to the Bank.

On November 8, 2004, the bankruptcy court issued an agreed order accepting the stipulation and modifying Yoder's Chapter 11 plan. On December 16, 2004, Yoder executed the third promissory note in favor of the Bank in the amount of $720,643.62. On December 16, 2004, Yoder executed a mortgage and absolute assignment of leases and rents to the Bank for the 13 parcels of real estate. That document was recorded on January 6, 2005.

On June 9, 2005, the Bank sold and assigned the rights to the note and the mortgage on the Property to Pramco. Pramco filed the lawsuit in this matter on September 14, 2005, seeking to foreclose the mortgage on the Property. On October 19, 2005, Pramco amended its complaint to add, among other things, Arellano as a defendant to answer to his interest in the Property. Arellano answered the amended complaint on December 7, 2005. At that time Arellano filed a counterclaim for declaratory judgment and a cross-claim against Yoder. Arellano's counterclaim for declaratory judgment was dismissed February 10, 2006.

This case was tried to the bench on June 16, 2006. At the time of trial, Pramco had foreclosed on 12 of the parcels of real estate, and had sold them at Sheriff's sale. Yoder's remaining debt to the Bank at the time of trial was $415,301.45. The trial court entered its Findings of Fact, Conclusions of Law and Order on September 12, 2006. The trial court denied Pramco's complaint for foreclosure with respect to Arellano's interest. The order reserved ruling on Arellano's cross-claim against Yoder. Pramco filed an Ind. Trial Rule 54(B) motion to make the trial court's order a final, appealable judgment. The trial court granted Pramco's motion on October 19, 2006. This appeal followed.

## DISCUSSION AND DECISION

### STANDARD OF REVIEW

When a party has requested specific findings of fact and conclusions of law pursuant to Ind.Trial Rule 52(A), the reviewing court may affirm the judgment on any legal theory supported by the findings. *Mitchell v. Mitchell*, 695 N.E.2d 920, 923 (Ind.1998). In addition, before affirming

on a legal theory supported by the findings but not espoused by the trial court, the reviewing court should be confident that its affirmance is consistent with all of the trial court's findings of fact and inferences drawn from the findings. *Id.* In reviewing the judgment, we first must determine whether the evidence supports the findings, and second, whether the findings support the judgment. *Ahuja v. Lynco Ltd. Medical Research,* 675 N.E.2d 704, 707 (Ind.Ct.App.1996), *trans. denied.* The judgment will be reversed only when clearly erroneous. *Id.* Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them. *Id.* To determine whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will not reweigh the evidence or assess witness credibility. *Id.* A judgment is clearly erroneous even though there is evidence to support it if the reviewing court's examination of the record leaves it with the firm conviction that a mistake has been made. *Owensby v. Lepper,* 666 N.E.2d 1251, 1256 (Ind.Ct.App.1996), *reh'g denied.*

The same standard of review applies when the trial court gratuitously enters findings of fact and conclusions of law, with one notable exception. *See Breeden v. Breeden,* 678 N.E.2d 423, 425 (Ind.Ct. App.1997). When the trial court enters such findings *sua sponte,* the specific findings control only as to the issues they cover, while a general judgment standard applies to any issue upon which the court has not found. *Id.* We may affirm a general judgment on any theory supported by the evidence adduced at trial. *Id.*

### I. FINDING OF FACT 18

 Pramco challenges the trial court's Finding of Fact Number 18. The trial court found as follows:

18. Mr. Jose Arellano never missed a monthly payment to Mr. Yoder and Mr. Yoder never failed to forward those payments to First National Bank as indicated above. A total of 39 monthly payments were made by Mr. Jose Arellano and presented to the bank by Mr. Yoder.

Pramco's App. p. 17. Pramco argues that the trial court's finding is clearly erroneous because 1) there was some evidence that Arellano made payments to Yoder subsequent to the date established by some of the evidence as Yoder's last payment to the Bank; 2) there was some evidence that Yoder first paid the Bank on February 2004 and other evidence establishing that Yoder had received payments from Arellano for two years prior; and 3) that there was evidence by way of receipts showing Arellano made 43 payments to Yoder, and other evidence showing that 39 of Arellano's payments were forwarded to the Bank by Yoder.

As previously stated, findings of fact are clearly erroneous if there is no evidence or reasonable inferences flowing from the evidence to support the finding. The enumerated arguments set forth above are invitations for this court to reweigh the evidence or reassess witness credibility. While the evidence at trial was conflicting, it was for the trial court as trier of fact to resolve the conflicts in the evidence and to determine issues of credibility. Pramco does present on appeal evidence that conflicts with the trial court's finding; however, there is evidence in the record to support the trial court's finding.

Yoder testified in his deposition, which was admitted at trial, that Arellano made each and every payment on the land sale contract, and that Yoder turned over each and every payment he received from Arel-

lano to the Bank. The evidence supports the trial court's finding that credible evidence established that 39 payments were forwarded to the Bank by Yoder from the payments Yoder consistently received from Arellano. Of the receipts presented at trial, there were photocopies of eight personal money orders. The amounts listed on the money orders were in amounts equal to the monthly rent. Four were for $500.00 each, and four were for $290.00 each. However, the rest of the information on the face of the money orders is mostly incomplete or blank. The trial court did not find that Arellano made only 39 payments. The trial court found that a total of 39 of Arellano's payments were taken by Yoder to the Bank.

Further, even if Pramco's position were true, and the trial court erred by finding that only 39 payments instead of 43 payments were made by Arellano and forwarded to the Bank by Yoder, it only bolsters the trial court's conclusion that equity should step in. To allow Pramco to foreclose on the Property would result in an even greater injustice to Arellano. If Pramco is making that argument to discredit Yoder, then it is of no avail here because of our standard of review. We will not reassess witness credibility.

## II. FINDINGS OF FACT 15 & 16

■ In its opening brief, Pramco challenges the trial court's findings of fact regarding Yoder's tender to the bank of the payments made by Arellano. More specifically, in its opening brief, Pramco argues that the trial court committed reversible error by finding that each time Yoder took a payment to the bank regarding the Property that he made a request for a separate accounting of that payment.

The trial court's findings of fact 15 & 16 are as follows:

15. A down payment in the amount of $15,000.00 from Mr. Jose Arellano to Mr. Yoder was taken to First National Bank by Mr. Yoder and presented by him as a payment on the indebtedness of Mr. Yoder.

16. All subsequent payments from Mr. Jose Arellano to Mr. Yoder were handled in the same fashion as the down payment. That is, they were taken to First National Bank by Mr. Yoder and presented as payments on the indebtedness of Mr. Yoder.

Pramco's App. p. 17.

Arellano correctly notes that the two challenged findings do not state that Yoder requested a separate accounting each time Yoder presented a payment on his indebtedness to the Bank. Pramco, in its reply brief appears to concede as much. Pramco states that "it would be error if this finding were understood to mean that with each subsequent payment Yoder made a new request for a separate accounting." Pramco's Reply Br. at 20.

Nonetheless, the trial court addressed the issue of the request for an accounting in a separate finding of fact. Finding of Fact 17 reads as follows:

17. The First National Bank was made aware by Mr. Yoder of his land contract with Arellanos. Further, Mr. Yoder asked First National Bank to account for those payments separately from the other Yoder dealings with First National Bank.

Pramco's App. at 17. Therefore, it appears that the trial court found, and the record supports the finding, that Yoder made a request for a separate accounting. There was no evidence that Yoder made subsequent attempts to separate the payments on that particular debt from the rest of his indebtedness, and the trial court did not make a finding that Yoder did. The logical inference was that Yoder indi-

cated on one occasion when presenting the proceeds from one month's payment on the land contract to the Bank that he wanted the payments on that particular portion of the debt to be accounted for separately. There was evidence the Bank refused to do so, but no trial court finding in this regard. Yoder continued to bring in the payments he received from Arellano and applied them to the debt. The trial court did not err.

### III. EQUITABLE RELIEF

██ Pramco argues that the trial court erred as a matter of law in concluding that 1) a payment by Arellano to Yoder was a payment by Arellano to Pramco; and, 2) that when the mortgage was paid off, the mortgage could no longer serve as collateral to secure Yoder's debt. More specifically, Pramco argues that while the trial court's factual findings are incorrect and need to be overturned, even if the factual findings were correct, they would not support a legal conclusion justifying the decision not to allow Pramco to foreclose on the Property.

The trial court's conclusions of law relevant to this issue are as follows:

3. Foreclosure of the mortgage held by Pramco III, LLC on the property located at 136 W. Linden Avenue, Logansport, Indiana 46947 will result in a forfeiture of the amounts paid by the Arellanos to Pramco III, LLC by way of Mr. Yoder and First National Bank and will over compensate Pramco by the same amount. Such a forfeiture is not favored by law. I.L.E. § 4.

4. "... [A] court of equity must always approach forfeitures with great caution, being forever aware of the possibility of inequitable dispossession of property and exorbitant monetary loss. ...[F]orfeiture may only be appropriate under circumstance[sic] in which it is

found to be consonant with notions of fairness and justice under the law." *Skendzel v. Marshall*, 261 Ind. 226, 241, 301 N.E.2d 641 (1973).

5. Permitting foreclosure of the mortgage held by Pramco III, LLC against the property occupied by the Arellanos under these circumstances of the instant case would result in forfeiture of a very significant amount of money paid by the Arellanos. The amounts already paid are in excess of the amount of the original mortgage. The Arellanos have already paid and Pramco III, LLC has already been compensated. Permitting foreclosure would essentially permit Pramco III, LLC to collect twice from Jose and Catarino Arellanos.

Pramco's App. p. 18–19.

Here, Pramco challenges the trial court's legal conclusions. We do not defer to conclusions of law, and a judgment is clearly erroneous if it relies on an incorrect legal standard. *Freese v. Burns*, 771 N.E.2d 697, 700 (Ind.Ct.App.2002).

Pramco is correct that the mortgage was recorded, was never released, and that Yoder's entire debt was not paid off. The evidence supports those facts. Pramco appears to conclude that the trial court had no other choice based upon the record than to allow the foreclosure on the Property. However, the trial judge stated that he was using his equitable power to deny forfeiture of the Property. The record in this matter supports the trial judge's decision.

██ This is an appeal of a mortgage foreclosure action. The vast weight of authority holds that foreclosure actions are essentially equitable. *Songer v. Civitas Bank*, 771 N.E.2d 61, 69 (Ind.2002). Generally, particular deference is given to the judgment of the trial court where the proceeding sounds in equity and judgments in

equity are clothed in a presumption of correctness. *Indiana Lawrence Bank v. PSB Credit Services, Inc.*, 706 N.E.2d 570, 572 (Ind.Ct.App.1999).

■ The evidence before the trial court regarding this specific parcel of property was that it originally was secured by a $33,000.00 mortgage, plus the interest on the mortgage. Yoder notified the Bank that he was selling the Property to Arellano under a land sale contract. The trial judge found that of the payments Arellano consistently made, 39 payments were forwarded by Yoder to the Bank, in addition to the $15,000.00 down payment made by Arellano. The trial judge concluded, and we think properly so, that to foreclose on the Property after more than $45,000.00 had been paid by Arellano under the land sale contract to Yoder, and then forwarded by Yoder to the Bank, would result in an injustice to Arellano. Pramco had already foreclosed on 12 parcels of property and more than $400,000.00 of Yoder's debt remained. While we agree that a mortgage is not the debt, but rather the security for the debt, Yoder's debt was undersecured. Pramco argues that it should not be required to release the Property, or collateral, as the debt secured by the collateral has not been paid. However, the trial court did not order the release of the Property, but rather, decided against foreclosure.

Pramco cites to *First Federal Savings Bank v. Hartley*, 799 N.E.2d 36 (Ind.Ct. App.2003), to support its position that the trial court should have followed the recording statutes instead of deciding the matter pursuant to equitable principles. Pramco argues that where there are competing mortgages, and a land sale contract is treated as a mortgage, that the first in time should win the dispute.

In *Hartley*, Blatz established a line of credit with a bank in order to purchase parcels of real estate to sell. Blatz bought one particular parcel of property with a $32,000.00 advance, and made no payments other than interest payments on that note. The original note was refinanced as Blatz continued to buy more parcels of real estate. Unlike the first parcel, when subsequent parcels were paid off by the purchasers, Blatz took the money to the bank to pay down the debt. The purchasers sought releases of the mortgages and received them. When Blatz sold the original parcel under a land sale contract to the Hartleys, he did not take the proceeds to the bank, but instead deposited the money in a separate account with the same bank. The bank was unaware of the Hartleys' interest in that parcel until Blatz defaulted on the note. The Hartleys were aware of the existence of a mortgage, but not the name of the institution, and received the title from Blatz, but not a release. The Hartleys claimed only the money they spent for improvements to the property. This court held that the trial judge erred by subordinating the bank's mortgage to the Hartleys' claim for money spent on improvements. 799 N.E.2d at 41–42. In reaching that conclusion, this court cited the aforementioned propositions advanced by Pramco.

The instant case is distinguishable for a number of reasons from *Hartley*. First, the Bank was aware of Arellano's interest in the Property. Second, Yoder tried to establish a separate accounting with the Bank for the payments made to purchase the Property. Arellano was promised, but was never given, the name of the mortgage holder, the principal amount of the loan, the installments payable on the loan, or other terms. Last, Yoder did forward the down payment, and 39 monthly payments to the Bank. The payments received from Arellano, and forwarded to the Bank by Yoder, were more than enough to amortize

the original note and mortgage on the Property.

As quoted in *Skendzel v. Marshall*, 261 Ind. 226, 301 N.E.2d 641 (1973):

Pomeroy defines this doctrine of equitable interference to relieve against penalties and forfeitures as follows:

Wherever a penalty or a forfeiture is used merely to secure the payment of a debt, or the performance of some act, or the enjoyment of some right or benefit, equity, considering the payment, or performance, or enjoyment to be the real thing intended by the agreement, and the penalty or forfeiture to be only an accessory, will relieve against such penalty or forfeiture by awarding compensation instead thereof, proportionate to the damages actually resulting from the non-payment, or non-performance, or non-enjoyment, according to the stipulations of the agreement. The test which determines whether equity will or will not interfere in such cases is the fact whether compensation can or cannot be adequately made for a breach of the obligation which is thus secured. If the penalty is to secure the mere payment of money, compensation can always be made, and a court of equity will relieve the debtor party upon his paying the principal and interest . . .

(The granting of relief in such circumstances is based on the ground that it is wholly against conscience to say that because a man has stipulated for a penalty in case of his omission to do a particular act—the real object of the parties being the performance of the act—if he omits to do the act, he shall suffer a loss which is wholly disproportionate to the injury sustained by the other party.) Pomeroy, Equity Jurisprudence, s 433, 5th Edition (1941). (Emphasis added.)

301 N.E.2d at 644–45. If forfeiture were allowed, Pramco would have received the benefit of Arellano's down payment, and subsequent monthly payments, which were taken by Yoder to the Bank, which in turn sold the mortgage to Pramco. Pramco would then be allowed to sell the Property at sheriff's sale, as Pramco did with the 12 other parcels of real estate, and retain the proceeds from the sale. It is highly unlikely that Pramco would be able to recover the $415,000.00 left of Yoder's debt from the sale of the Property. The trial court did not err.

## IV. ADDITIONAL QUESTIONS RAISED

Pramco raises several questions that were not before the trial court, and we will not address here. The trial court was not asked to decide a quiet title action involving the Property, but was asked to determine if forfeiture of the Property was proper.

Further, Pramco argues that payments by Arellano to Yoder did not constitute payment to Pramco. However, the facts adduced at trial established that 1) Yoder applied the payments from Arellano under the land sale contract for the Property to the mortgages; 2) Yoder attempted to have Arellano's payments separately accounted for, but the payments were instead paid against the debt as a whole; and, 3) that the Bank sold the mortgages to Pramco. Satisfaction of the mortgage ultimately held by Pramco was being accomplished in part by the payments made by Arellano to Yoder.

## V. APPELLATE RULE 66E

Ind. Appellate Rule 66(E) provides for an award of damages and attorney's fees if an appeal, petition, or motion or response, is found by a court on appeal to be frivolous or in bad faith. The damages

and fees are awarded in the court's discretion. Arellano contends that Pramco's opening brief suffers from procedural bad faith.

One of the deficiencies highlighted by Arellano is Pramco's Statement of Facts. Ind. Appellate Rule 46(A)(6)(b) & (c) provide that the statement of the facts shall be stated in accordance with the standard of review appropriate to the judgment or order being appealed and shall be in narrative form. While Pramco's brief is in narrative form, the facts are not presented in a light most favorable to the trial court's judgment, and contains argument more appropriately addressed in the argument section of the opening brief. *See* Ind. Appellate Rule 46(A)(8).

We do not find that Pramco's opening brief is frivolous, but do find that the opening brief is overly argumentative in sections where argument is not appropriate. The reply brief, on the other hand, reflects more appropriately what is required of the appellate advocate, informing this court of the facts as found by the court below, and advancing arguments for this court to consider in determining whether the trial court acted properly. Therefore, while we decline to award attorney fees or damages, we do remind counsel of the need to refrain from overly zealous advocacy when preparing appellate briefs.

### CONCLUSION

The trial court's findings are not clearly erroneous, but supported by the evidence. The trial court did not err by concluding that equitable relief was appropriate in the

case at bar. Last, attorney fees are not warranted in this instance.

Affirmed.

SHARPNACK, J., and KIRSCH, J., concur.