In re Landon Everett WALKER, Debtor.

Bankruptcy No. 97–5991–RLB–11.

United States Bankruptcy Court,
S.D. Indiana,
Indianapolis Division.

July 15, 1998.

Paul T. Deignan, Ancel & Dunlap, Indianapolis, IN, for Debtor.

James G. Lauck, Mary E. Browne, Kroger, Gardis & Regas, Indianapolis, IN, for Creditor/Amonette.

*ENTRY ON MOTION FOR ORDER DIRECTING DEBTOR TO ASSUME OR REJECT EXECUTORY CONTRACT*

ROBERT L. BAYT, Bankruptcy Judge.

This matter is before the Court on the Motion for Order Directing Debtor to Assume or Reject Executory Contract ("Motion for Assumption"), filed by Randall Amonette ("Mr. Amonette") on December 24, 1997. Landon Everett Walker (the "Debtor") filed an objection ("Objection") to the Motion for Assumption on January 6, 1998. A hearing on the Motion for Assumption and Objection was held on April 13, 1998, at which hearing the parties agreed to submit the issue raised by the Motion for Assumption to the Court on briefs and a stipulation of facts to be entered into by the parties. The Court, having reviewed the Motion for Assumption, the Objection, the Stipulation of Facts filed by the parties on June 18, 1998 ("Stipulation of Facts"), the Affidavit filed by the Debtor on June 19, 1998 ("Affidavit"), and the briefs of the parties, now makes the following Entry.

The Debtor filed a petition under Chapter 11 on May 28, 1997. Prior to the petition filing, the Debtor entered into a contract (the "Purchase Contract") to buy farmland (the "Farmland") from Mr. Amonette and his spouse, Vina Amonette.

In the Motion for Assumption, Mr. Amonette asserts that the Purchase Contract is an executory contract, and that pursuant to 11 U.S.C. § 365(b)(1), any arrearage under the Purchase Contract must be cured before the Debtor can assume the Purchase Contract. The Debtor asserts, to the contrary, that the Purchase Contract is in the nature of a secured transaction, and that Section 365(b)(1) does not require him to cure the arrearage under the Purchase Contract in order to assume the contract.

*The Facts*

The Stipulation of Facts entered into by the parties provides as follows:

1. On March 15, 1995, Walker entered into a Real Estate Contract ("Contract") with Randall and Vina Amonette for the purchase of certain farmland and improvements located in Wayne County, Indiana.... The Contract constitutes a land sale contract in relation to approximately two hundred seventy-nine (279) acres of farmland with improvements. Under said Contract Amonette is the Seller and Walker is the Buyer.

2. The purchase price for the real estate being sold pursuant to the Contract was One Hundred Ninety–Eight Thousand Dollars ($198,000 .00) plus attorney fees and simple interest per annum at the rate of nine percent (9%). Said Contract required the Buyer to pay real estate taxes during the period of the land purchase contract.

3. The purchase price was to be paid in installment payments in the following manner:

    a. the sum of $5,000.00 was to be paid on March 31, 1995. An additional $5,000.00 was to be paid on June 30, 1995. An additional $10,000.00 was to be paid on September 30, 1995.

    b. Following the above payments, the sum of $19,568.90 was to be paid on or before the 30th day of April of every year thereafter beginning April 30, 1996 and continuing every year thereafter for a period of nineteen (19) years until the purchase price, with interest, is paid in full.

4. Walker has made the following payments due under the land sale contract:

    a. $5,000.00 payable March 31, 1995;

    b. $5,000.00 payable June 30, 1995;

    c. $10,000 payable September 30, 1995;

    d. $19,586.90 payable April 30, 1996;

    e. Real estate taxes payable May, 1995, November, 1995, and November, 1997.

    f. With regard to the real estate taxes payable May, 1996, November, 1996, and May 1997, Walker did not make those payments. Amonette made the payments. Walker and his non-debtor spouse entered into an agreement to repay Amonette for the real estate installments paid by Amonette for 1996 and part of 1997. Under the agreement, payments are due at the rate of $100 per month commencing with two payments in July, 1997. All payments under this agreement have been made and the indebtedness for the tax payments have [sic] been reduced to approximately $2,500.00.

5. The only pre-bankruptcy payments due under the land sale contract not paid by Walker are the annual payment due April 30, 1997 and the three installments of real estate taxes, which real estate tax arrearage is being repaid pursuant to the above-referenced agreement with Amonette.

6. The Contract is in default and there is now due to Amonette from Walker the sum of approximately $194,874.00 plus interest, and the balance of the real estate taxes paid by Amonette.

7. The current value of the real estate and improvements involved in this land sale contract (279 acres) is approximately $350,000.00 based upon an appraisal made by P. Steven Slonaker dated April 10, 1998. . . .

In his Affidavit, the Debtor alleges that he has made the following improvements, totaling $105,000, to the Farmland:

    a. $65,000.00 of improvements made to the residence;

    b. $15,000.00 in fencing improvements to the premises;

    c. $3,000.00 lime treatment for the tillable ground;

    d. $7,500.00 for alfalfa seeding in order to establish a seven-year alfalfa crop;

    e. $7,000.00 in expenses to clear land;

    f. $3,000.00 for expenses to plant 400 apple trees;

    g. $4,000.00 landscaping done in and around the residence.

### The Law

The Seventh Circuit examined the nature of land sale contracts in *In re Streets & Beard Farm Partnership*, 882 F.2d 233 (7th Cir.1989). The Seventh Circuit held in *Streets & Beard* that a land sale contract is *not* in the nature of an executory contract, where the only remaining obligation on the part of the seller is to deliver legal title to the buyer.

The Bankruptcy Code does not contain a precise definition of the term executory contract. The legislative history to [Section] 365, however, provides that an executory contract is a contract on which performance remains due to some extent on both

sides.... Taken literally, this definition would render almost all agreements executory since it is the rare agreement · that does not involve unperformed obligations on either side. In our view, however, this interpretation would not effect the intent of Congress. Rather, we believe that Congress intended [Section ] 365 to apply to contracts where significant unperformed obligations remain on both sides ....

[T]he debtor was entitled to immediate possession of the property and was required to pay all relevant taxes and costs. In contrast the only remaining obligation on the part of the vendor is to deliver legal title upon the completion of the payments. *In our view, the delivery of a legal title is a mere formality and does not represent the kind of significant legal obligation that would render the contract executory.* Rather, we believe the arrangement in this case is merely a security agreement where the vendor holds legal title in trust solely as security for the payment of the purchase price.

*Streets & Beard,* 882 F.2d at 235 (citations omitted, emphasis added).

Mr. Amonette points out, correctly, that the decision in *Streets & Beard* was based on Illinois law, and that the instant case should be decided pursuant to Indiana law. *See Streets & Beard,* 882 F.2d at 235 ("in determining the significance of the remaining obligations under a contract we look to relevant state law"). Indiana law, however, does not support Mr. Amonette's position that the Purchase Contract is an executory contract. The Indiana Supreme Court has held that a land sale contract should be treated as a secured transaction. *Skendzel v. Marshall,* 261 Ind. 226, 301 N.E.2d 641 (Ind.1973).[1]

The *Skendzel* court was not, of course, squarely faced with the issue before the Court today, *i.e.,* the treatment of land sale contracts under the Bankruptcy Code. Nevertheless, *Skendzel* is relevant to the Court's decision today for its recognition that a land sale contract is similar to, if not identical with, a mortgage transaction. Based on the holding in *Skendzel,* as well as the unequivocal holding of the Seventh Circuit in *Streets & Beard* that delivery of legal title is not the kind of legal obligation that renders a contract executory, the Court concludes today that the Purchase Contract is not in the nature of an executory contract.[2] Moreover, given the policy concerns expressed in *Skendzel,* treatment of the Purchase Contract as a secured transaction is particularly appropriate here, where the Debtor has paid approximately $40,000 of the purchase price for the Farmland, and has made substantial improvements to the property. *See* Debtor's Affidavit, paragraph 3.

For all the foregoing reasons, it is the conclusion of the Court that the Purchase Contract is in the nature of a secured transaction, and is not in the nature of an executory contract.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that the Motion for Order Directing Debtor to Assume or Reject Executory Contract be, and hereby is, DENIED. The Purchase Contract is hereby deemed to be not in the nature of an executory contract.

---

1. In *Skendzel,* the seller pursuant to a land sale contract sought possession of the land through enforcement of the forfeiture clause of the land sale contract. The Indiana Supreme Court held that allowing repossession of the land through forfeiture would be inequitable, and that foreclosure was the proper remedy for the seller.

2. To the extent that Judge Vandivier held to the contrary in *In re Coffman,* 104 Bankr.958 (Bkrtcy.S.D.Ind.1988), the Court rejects the analysis set out in *Coffman.* The Court notes that *Coffman* was decided in 1988, prior to the 1989 decision of the Seventh Circuit in *Streets & Beard.*