**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Dec 12 2013, 10:14 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**PATRICK J. ROBERTS**
Roberts Law Firm
Peru, Indiana

ATTORNEY FOR APPELLEE:

**THOMAS J. HILLIGOSS**
McIntyre Hilligoss Vent & Welke
Kokomo, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| PAUL D. SCHOOLMAN, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 52A02-1304-DR-344 |
| | ) | |
| TAMZEN L. SCHOOLMAN, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE MIAMI SUPERIOR COURT
The Honorable Daniel C. Banina, Judge
Cause No. 52D02-1202-DR-48

**December 12, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Paul Schoolman appeals the trial court's distribution of property in the dissolution of his marriage to Tamzen Schoolman. We affirm.

**Issues**

Paul raises two issues, which we consolidate and restate as whether the trial court properly divided the marital estate.

**Facts**

Paul and Tamzen were married in 1985 and had one child who is now an adult. Paul was a farmer until he went to college in his forties and became a school teacher. He was a teacher until he retired at sixty-seven years of age. At the time of their marriage, Tamzen had completed a bachelor's degree in nursing and was studying to become a nurse practitioner. Tamzen did not complete her nurse practitioner training after her marriage. She stayed at home with their son and helped with the farming. After their son went to school, Tamzen was a substitute teacher for a couple of years and then became a school nurse making $32,000 per year.

In 1983, prior to their marriage, Paul inherited a significant amount of property. He also owned a farm that was subject to a mortgage. During their marriage, Paul sold much of the inherited property, earning more than one million dollars. Paul always put the proceeds of the sales into joint accounts with Tamzen. In February 2010, Paul also entered into a real estate contract to sell property to J.B. Ladd for $179,253.75. The contract included a down payment of $26,888.06 and yearly payments of $16,026 plus interest for ten or eleven years.

In February 2012, Paul filed a petition for dissolution of marriage, and a hearing was held in January 2013. At the time of the hearing, Paul was sixty-nine years old and worked occasionally as a real estate agent. However, he did not sell any properties in 2012. Tamzen was fifty-nine years old at the time of the hearing and was still employed as a school nurse. Paul asked that the remaining Ladd contract proceeds be excluded from the marital estate.

The trial court entered findings of fact and conclusions thereon. The trial court included the Ladd contract in the marital estate. The trial court ordered that "[t]he net marital estate, not including the marital residence, should be divided as equally as possible, so that Paul receives $313,153.56 and Tamzen receives $313,153.55." Appellant's App. p. 18. The trial court ordered that the marital residence be sold and that the net proceeds of the sale be shared equally by the parties. Paul now appeals.

**Analysis**

The trial court here entered sua sponte findings of fact and conclusions thereon. Sua sponte findings control only as to the issues they cover, and a general judgment will control as to the issues upon which there are no findings. Yanoff v. Muncy, 688 N.E.2d 1259, 1262 (Ind. 1997). We will affirm a general judgment entered with findings if it can be sustained on any legal theory supported by the evidence. Id. When a court has made special findings of fact, we review sufficiency of the evidence using a two-step process. Id. First, we must determine whether the evidence supports the trial court's findings of fact. Id. Second, we must determine whether those findings of fact support the trial court's conclusions of law. Id.

3

Findings will only be set aside if they are clearly erroneous. Id. "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." Id. A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. Id. In order to determine that a finding or conclusion is clearly erroneous, an appellate court's review of the evidence must leave it with the firm conviction that a mistake has been made.[1] Id. We neither reweigh the evidence nor assess the credibility of witnesses, but consider only the evidence most favorable to the judgment. Fowler v. Perry, 830 N.E.2d 97, 102 (Ind. Ct. App. 2005).

## A. Findings

Paul begins by arguing that several findings were erroneous. Many of these findings merely restate Tamzen's testimony. To the extent the findings are not merely restatements of the testimony, our review of the record reveals conflicting evidence on many of the findings. Paul's arguments regarding Findings 10, 14, 16, 17, 19, 24, 27, 28B, 43, 44, 51, and 52 are requests that we reweigh the evidence or judge the credibility of the witnesses, which we cannot do. We decline to address those findings.

---

[1] Paul argues that the trial court erred by adopting verbatim portions of Tamzen's proposed findings of fact and conclusions thereon. Although a trial court is discouraged from adopting a party's proposed findings verbatim, this practice is not prohibited. CBR Event Decorators, Inc. v. Gates, 962 N.E.2d 1276, 1281 (Ind. Ct. App. 2012), trans. denied. The adoption of Tamzen's proposed findings was not in and of itself improper. "However, the wholesale adoption of one party's findings results in an 'inevitable erosion of the confidence of an appellate court that the findings reflect the considered judgment of the trial court.'" Id. (quoting Prowell v. State, 741 N.E.2d 704, 709 (Ind. 2001)). Paul concedes that "there has never been a case overturned because of [this] method." Appellant's Br. p. 6. However, he argues that "the due process afforded by the U.S. Constitution and the Indiana Constitution require a fair trial." Id. Paul does not explain how his due process rights were violated or how his right to a fair trial was violated. Consequently, Paul has waived this argument.

Paul is correct that Finding 6 erroneously states Paul's age as sixty-five, but the evidence showed that he was sixty-nine years old at the time of the hearing. However, "even an erroneous finding is not fatal to a trial court's judgment if the remaining valid findings and conclusions support the judgment, rendering the erroneous finding superfluous and harmless as a matter of law." Curley v. Lake Cnty. Bd. of Elections & Registration, 896 N.E.2d 24, 32 (Ind. Ct. App. 2008), trans. denied. We conclude that this minor error was not fatal to the trial court's judgment, and the error was harmless.

Paul also argues that Finding 9 is erroneous because it states that he was employed by Maconaquah Schools. This finding is supported by the evidence. Exhibit I concerns Paul's school retirement records and indicates that he was employed by Maconaquah Schools, along with other school corporations during his teaching career. The trial court's finding is not clearly erroneous.

### B. Ladd Land Contract

Next, Paul argues that several of the findings concerning the Ladd land contract are clearly erroneous. Paul argues that the property should not have been included as a marital asset and that the trial court's valuation of the property is erroneous.

Paul argues that the remaining proceeds from the Ladd contract should not be included in the marital estate because they involve future proceeds of the contract. However, "[u]nder a typical conditional land contract, the vendor retains legal title until the total contract price is paid by the vendee." Skendzel v. Marshall, 261 Ind. 226, 234, 301 N.E.2d 641, 646 (1973), cert. denied. The Ladd contract is a typical land contract with legal title in the property remaining with Paul until the total contract price is paid.

5

See Ex. 4. It is well established that all marital property goes into the marital estate for division, whether it was owned by either spouse before the marriage, acquired by either spouse after the marriage and before final separation of the parties, or acquired by their joint efforts. Ind. Code § 31-15-7-4(a); Estudillo v. Estudillo, 956 N.E.2d 1084, 1090 (Ind. Ct. App. 2011). Consequently, the trial court properly held that the property subject to the land contract was part of the marital estate.

Paul also argues that the trial court's valuation of the property is erroneous. The trial court valued the land contract at $145,689.79. Tamzen presented evidence that the land contract was valued at $145,689.79 as of the February 29, 2012. Paul argued that the land contract was valued at $137,879.53 as of February 29, 2012. The differences in their valuations are based on differences in the payment schedule and the due dates of the payments. Tamzen entered into evidence a contract and payment schedule provided by Paul during discovery. Paul entered into evidence a revised contract with handwritten changes and a revised payment schedule. The trial court noted that the revised documents were "advantageous to Paul" and adopted a value based on the original contract and payment schedule. Appellant's App. at 10. On appeal, we cannot reweigh the evidence or judge the parties' credibility. Given the conflicting evidence, we cannot say that the trial court's valuation is clearly erroneous.

### C. Property Division

Paul argues that the trial court abused its discretion when it divided the marital estate. "This case turns on whether the trial court's division of the marital property was just and reasonable." Fobar v. Vonderahe, 771 N.E.2d 57, 59 (Ind. 2002). "Although

6

this is in some sense an issue of law, it is highly fact sensitive and is subject to an abuse of discretion standard." Id. We will not reweigh evidence, and we will consider the evidence in a light most favorable to the judgment. Id.

In an action for dissolution of marriage, the trial court is required to divide the marital property in a "just and reasonable manner." I.C. § 31-15-7-4(b). Indiana Code Section 31-15-7-5 provides:

> The court shall presume that an equal division of the marital property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:
>
> (1)  The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.
>
> (2)  The extent to which the property was acquired by each spouse:
>
>     (A)  before the marriage; or
>
>     (B)  through inheritance or gift.
>
> (3)  The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.
>
> (4)  The conduct of the parties during the marriage as related to the disposition or dissipation of their property.
>
> (5)  The earnings or earning ability of the parties as related to:

7

> (A)　a final division of property; and
>
> (B)　a final determination of the property rights of the parties.

A party seeking to rebut the presumption of equal division of marital property bears the burden of proof in doing so. Beckley v. Beckley, 822 N.E.2d 158, 163 (Ind. 2005); I.C. § 31-15-7-5.

The division of marital assets is a matter within the sound discretion of the trial court. Estudillo v. Estudillo, 956 N.E.2d 1084, 1090 (Ind. Ct. App. 2011). When a party challenges the trial court's division of marital property, he or she must overcome a strong presumption that the court considered and complied with the applicable statute. Id. When we review a claim that the trial court improperly divided marital property, we must decide whether the trial court's decision constitutes an abuse of discretion, considering only the evidence most favorable to the court's disposition of the property, without reweighing the evidence or assessing the credibility of witnesses. Id. at 1090-91.

The trial court here ordered an equal distribution of the marital assets. Paul seems to argue that he rebutted the presumption of an equal distribution. He argues that his economic circumstances as compared to Tamzen's economic circumstances justify a deviation. We address each of the relevant statutory factors.

First, both parties contributed "to the acquisition of the property" during their twenty-seven-year marriage. I.C. § 31-15-7-5(1). Paul worked as a farmer, went to college, and became a teacher. Tamzen cared for their child, helped on the farm, and later became a school nurse. As to the extent to which the property was acquired by each

8

spouse before the marriage or through inheritance or gift, the evidence demonstrated that Tamzen brought $18,000 to the marriage. On the other hand, Paul brought more than one million dollars in property that he inherited shortly before the marriage and a farm subject to a mortgage. During the marriage, Paul sold the properties and comingled the proceeds in joint accounts with Tamzen.

As for the "conduct of the parties during the marriage as related to the disposition or dissipation of their property," Tamzen testified that some guns that were in Paul's possession are missing and that there were substantial empty spaces in the outbuilding during the appraisal. I.C. § 31-15-7-5(4). In May 2011, Tamzen withdrew $185,916.15 from various joint certificates of deposit and accounts and deposited the money into accounts in her name. In March 2012, Tamzen withdrew $20,000 from a joint account and deposited it into a joint account with her sister. Paul then withdrew the remaining $107,058.95 from the account and deposited it into an account in his name.

Finally, as for the economic circumstances and earning abilities of each party, at the time of the hearing, Tamzen was fifty-nine years old and Paul was sixty-nine years old. Paul was retired, was attempting to sell real estate, without much success, and had some health problems. Tamzen was still working as a school nurse. Although Paul argues that Tamzen could make more money working in a hospital, Tamzen testified that she would need significant retraining to do so, and her job prospects were limited given her age and time away from hospital nursing. She also testified that, at Paul's request, she did not continue her education to become a nurse practitioner, which would have allowed her to earn significantly more money.

9

We simply cannot say that Paul has overcome the statutory presumption in favor of an equal distribution of the marital property. Given the parties' lengthy marriage, comingling of funds, significant remaining assets, and current situations, the trial court did not abuse its discretion by ordering an equal division. See, e.g., Fobar, 771 N.E.2d at 60 (holding that "the trial court was within its discretion in dividing the property 50-50, and was not required to alter its virtually equal division of the marital property to reflect [the wife's] interest in the inherited . . . property").

## Conclusion

The trial court's division of marital property was not clearly erroneous. We affirm.

Affirmed.

CRONE, J., and PYLE, J., concur.